(No. 64313.—

ESTATE OF KATHLEEN ANN JOHNSON, Deceased, by Michael W. Johnson, Adm'r, Appellee, v. CONDELL MEMORIAL HOSPITAL, Appellant.

*Opinion filed February 11, 1988.*

498

Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of

Chicago (D. Kendall Griffith, Michael F. Henrick and Lynn D. Dowd, of counsel), for appellant.

Joseph R. Curcio, of Joseph R. Curcio, Ltd., of Chicago (David A. Novoselsky and Kathleen M. Krist, of David A. Novoselsky & Associates, of counsel), for appellee.

JUSTICE WARD delivered the opinion of the court:

The plaintiff, Michael W. Johnson, filed a complaint, which is described hereafter, as administrator of the estate of Kathleen Ann Johnson, who was killed when the car she was driving was struck by a Village of Libertyville police department vehicle operated by defendant Sandra Pierce. Pierce was in pursuit of an auto driven by Janice Holt, who just prior to the police pursuit had been a patient at Condell Memorial Hospital (hereafter Condell). Johnson sued Pierce, the Village of Libertyville, Holt, and Condell. The trial court dismissed the counts against Condell and found no just reason for delaying enforcement or appeal of the dismissal (107 Ill. 2d R. 304(a)). The appellate court, with one justice dissenting, reversed in part and affirmed in part (146 Ill. App. 3d 834), and the hospital petitioned for leave to appeal to this court, which we allowed under our Rule 315(a) (107 Ill. 2d R. 315(a)).

The sufficiency of the counts charging Condell are at issue; the other three defendants are not involved in this appeal. As this appeal is before the court on the defendant's motion to dismiss, all well-pleaded facts in the complaint and all reasonable inferences from them will be regarded as true. (*Katz v. Belmont National Bank* (1986), 112 Ill. 2d 64, 67; *Mein v. Masonite Corp.* (1985), 109 Ill. 2d 1, 7.) The plaintiff's complaint alleges that on October 11, 1983, Janice Holt was a patient at Condell. Holt gained access to a dangerous weapon—a knife—and

threatened hospital personnel, who then attempted to restrain her. Holt got her car keys and fled the hospital in her car. Someone on the hospital staff summoned the Libertyville village police to pursue Holt. The plaintiff alleges that Holt drove her car at a high rate of speed as she was pursued by police officer Sandra Pierce. Pierce allegedly did not sound the siren or turn on the flashing lights of her police vehicle, failed to keep a proper lookout for other vehicles, and drove through an intersection against the traffic signal. Pierce allegedly drove her car in such a negligent manner that she struck the car driven by Kathleen Ann Johnson at an intersection, injuring Johnson and ultimately causing her death.

The plaintiff's 11-count amended complaint included three counts against Condell. Counts V and XI were brought under the Survival Act (Ill. Rev. Stat. 1983, ch. 110½, par. 27—6), seeking damages for the decedent's personal injuries up to the time of her death. Count V seeks compensatory damages, while count XI seeks both compensatory and punitive damages for what plaintiff alleges was Condell's wilful and wanton misconduct. Count VI was brought under the Wrongful Death Act (Ill. Rev. Stat. 1983, ch. 70, par. 1 *et seq.*), seeking compensatory damages and alleging that decedent's death was proximately caused by Condell's negligence.

The plaintiff alleges in counts V and VI that Condell either knew or should have known that Holt suffered from mental disorders, drug addiction, and had a propensity toward violence and flight from authorities. The complaint also alleges that Holt was a "person subject to involuntary admission at Condell" or another appropriate facility under section 1—119 of the Mental Health and Developmental Disabilities Code (Ill. Rev. Stat. 1983, ch. 91½, par. 1—119) (hereafter the Code). The plaintiff alleges that Condell's employees attempted to restrain Holt, thereby assuming from their attempt the

duty to exercise ordinary care. The plaintiff alleges that Condell was negligent in that it failed to provide adequate security to control Holt, allowed Holt "access to a dangerous weapon which should have been denied her in her mental and physical condition," allowed Holt access to her car keys, provided inadequate parking lot security to prevent Holt access to her car, and "failed to have Holt involuntarily admitted to an appropriate mental or physical health care facility." Similar factual allegations are set out in count XI, seeking punitive and compensatory damages under the Survival Act. These acts, the plaintiff contends, constitute either negligence, as he alleges in counts V and VI, or wilful and wanton misconduct, as he alleges in count XI, and the acts proximately caused the decedent's injuries and death.

Condell moved to dismiss the three counts on the grounds that the hospital owed no duty to Johnson, that Condell's actions were not the proximate cause of Johnson's death, and that punitive damages were not available in either a survivorship or wrongful death action. The trial court dismissed the three counts against Condell. On the plaintiff's appeal, the appellate court affirmed the dismissal of count XI as to the punitive damages, but reversed and remanded as to counts V and VI and the claim for compensatory damages in count XI. As stated, Condell was given leave to appeal to this court. The dismissal of the punitive damages portion of count XI is not raised in this appeal; only the allegations concerning compensatory damages are before us.

The defendant makes three principal arguments for reversal of the appellate court. Firstly, Condell contends the appellate court incorrectly imposed a duty upon a hospital to protect one who is not a patient and the public from the conduct of one who was neither voluntarily nor involuntarily admitted to the hospital's custody. The defendant says it cannot owe a duty to control a patient

who has not been voluntarily or involuntarily admitted to its custody. The defendant says that whether a person is subject to involuntary admission, as the complaint alleges, to a mental health facility is a question for legal determination. The defendant relies on *Addington v. Texas* (1979), 441 U.S. 418, 425, 60 L. Ed. 2d 323, 330-31, 99 S. Ct. 1804, 1809, in arguing that an individual's loss of liberty through involuntary commitment requires due process protection. Thus, the defendant argues, because Holt had not been involuntarily committed, it had no duty to keep her at its facility, as the resulting loss of liberty without a legal determination for her involuntary commitment would have violated her due process rights.

The plaintiff responds, firstly, that it is improper for Condell to challenge the applicability of the Code because it did not raise the point in the trial court, and the issue appeared for the first time in Condell's petition for rehearing in the appellate court. As the defendant correctly observes, however, while an appellant who fails to raise an issue in the appellate court waives the issue before this court, an appellee in the appellate court (Condell here) may raise a ground in this court which was not presented to the appellate court in order to sustain the judgment of the trial court, as long as there is a factual basis for it. (*Hammond v. North American Asbestos Corp.* (1983), 97 Ill. 2d 195, 205-06; *Shaw v. Lorenz* (1969), 42 Ill. 2d 246, 248; see also *People v. Franklin* (1987), 115 Ill. 2d 328, 336.) Too, a reviewing court may sustain the decision of the trial court on any grounds called for by the record, regardless of whether the trial court made its decision on the proper ground. *Bell v. Louisville & Nashville R.R. Co.* (1985), 106 Ill. 2d 135, 148; *Material Service Corp. v. Department of Revenue* (1983), 98 Ill. 2d 382.

The plaintiff also submits that the appellate court properly held Condell owed a duty to Holt that extended

to the benefit of the plaintiff's decedent. It is the plaintiff's contention that Condell owed a duty to exercise reasonable care to control a known dangerous person, Holt, to prevent harm to other persons. This duty, the plaintiff says, is recognized in section 319 of the Restatement (Second) of Torts (1965), "Duty of Those in Charge of Person Having Dangerous Propensities." The plaintiff concedes that his decedent was a stranger to Condell and Holt, but says that, because of Condell's patient relationship with Holt, it owed a duty to control her, the benefit of which duty extended in favor of the plaintiff's decedent. Under the Restatement, the plaintiff says that Condell, as a voluntary custodian with knowledge of Holt's dangerous propensities, owed a duty to persons exposed to Holt.

For the plaintiff to state a cause of action against Condell for negligence, he must set out facts establishing the existence of a duty owed by the defendant to the plaintiff, that the duty was breached and that, as a proximate cause, the plaintiff suffered damages. (*Cunis v. Brennan* (1974), 56 Ill. 2d 372, 374.) Consequently, the first inquiry is whether as a matter of law the defendant hospital owed a duty to plaintiff's decedent to control Holt and take steps to prevent the acts that occurred here. The determination of duty—whether the defendant and the plaintiff stood in such a relationship to one another that the law imposes upon the defendant an obligation of reasonable conduct for the benefit of the plaintiff—is a question of law. *Pelham v. Griesheimer* (1982), 92 Ill. 2d 13, 19.

In general, one has no duty to control the conduct of another to prevent him from causing harm to a third party (Restatement (Second) of Torts §315 (1965)), but there are exceptions to this, based on "special relationships." Sections 315 through 319 of the Restatement (Second) of Torts (1965) describe these relationships. The

"special relationship" that the plaintiff alleges existed here that would give rise to a duty to protect another from harm is found in section 319, which provides:

> "One who takes charge of a third person whom he knows or should know to be likely to cause bodily harm to others if not controlled is under a duty to exercise reasonable care to control the third person to prevent him from doing such harm." (Emphasis added.) Restatement (Second) of Torts §319 (1965).

The complaint alleges that Holt was a person subject to involuntary admission to Condell or another appropriate mental health facility pursuant to the Code. A person subject to involuntary admission is one "who is mentally ill and who because of his illness is reasonably expected to inflict serious physical harm upon himself or another in the near future" or "is unable to provide for his basic physical needs so as to guard himself from serious harm." (Ill. Rev. Stat. 1983, ch. 91½, par. 1—119.) Involuntary admission by order of court requires, *inter alia*, the filing in circuit court of a petition by a person over 18 seeking the admission of another person, which may be accompanied by a certificate by a qualified examiner, physician, or clinical psychologist, and a court hearing. (Ill. Rev. Stat. 1983, ch. 91½, pars. 3—700 through 3—703.) Involuntary admission involves, of course, a loss of individual liberty (*In re Stephenson* (1977), 67 Ill. 2d 544, 553), and requires clear and convincing evidence (Ill. Rev. Stat. 1983, ch. 91½, par. 3—808) that the person is not only suffering from a mental illness (*In re Crenshaw* (1978), 62 Ill. App. 3d 260, 265), but that that illness may also cause him to inflict serious physical harm upon himself or another in the near future (Ill. Rev. Stat. 1983, ch. 91½, par. 1—119; see also *People v. Lang* (1986), 113 Ill. 2d 407, 453-54). A person involuntarily admitted upon court order, of course, is not free to leave the facility simply when he desires. See Ill. Rev.

Stat. 1983, ch. 91½, pars. 3—813, 3—900 through 3—905.

An individual may also be admitted as a voluntary patient upon the filing of an application with the facility director, who must determine if the person is clinically suitable for admission as a voluntary patient. (Ill. Rev. Stat. 1983, ch. 91½, par. 3—400.) Such a voluntary patient must be discharged within five days of giving his written request to leave, unless a petition and two certificates are filed with the court asserting that the person is subject to involuntary admission. (Ill. Rev. Stat. 1983, ch. 91½, par. 3—401; *In re Hays* (1984), 102 Ill. 2d 314, 317-18.) Under the emergency-admission procedures of the Code, involuntary admission is commenced by the filing of a petition with the director of the mental health facility stating that immediate hospitalization is necessary for the protection of the individual or others from physical harm. (Ill. Rev. Stat. 1983, ch. 91½, par. 3—601.) That petition is to be accompanied by a certificate executed by a physician, qualified examiner, or clinical psychologist stating that the person is subject to involuntary admission and requires immediate hospitalization. (Ill. Rev. Stat. 1983, ch. 91½, par. 3—602.) An individual, however, may be detained at the hospital on the basis of a petition alone if the petitioner also states that he was unable to secure a certificate from a physician, qualified examiner, or clinical psychologist who had examined the person or could examine the person before admission. (Ill. Rev. Stat. 1983, ch. 91½, par. 3—603.) The provision for emergency admission requires the petitioner to state reasons for the conclusion that the individual is subject to involuntary treatment (Ill. Rev. Stat. 1983, ch. 91½, par. 3—601(b)), as "[t]he possibility of wrongful commitment has been a predominant concern of state legislatures in approaching the problems of the mentally ill" (Report, Governor's Commission for the Re-

vision of the Mental Health Code of Illinois, at 51 (1976)). If an individual is detained at a mental health facility on the basis of a petition alone, he "shall be released forthwith" if a certificate is not furnished to the facility within 24 hours of his admission. Ill. Rev. Stat. 1983, ch. 91½, par. 3—604; see also Ill. Rev. Stat. 1983, ch. 91½, par. 3—607.

Because the plaintiff alleges neither that Holt was legally committed to Condell's custody through involuntary admission upon court order nor that she had been voluntarily admitted, or even that a petition had been filed under the emergency-admission provisions of the Code, we must infer that she was admitted on her own request without having made formal application, as provided under the informal-admission provision of the Code (Ill. Rev. Stat. 1983, ch. 91½, par. 3—300). Under the informal-admission provision, the patient is admitted after examination and if the facility director considers the person "clinically suitable for admission upon an informal basis." Such a patient is entitled, upon his or her request, to be discharged at any time during the facility's normal day-shift hours. (Ill. Rev. Stat. 1983, ch. 91½, par. 3—300(b).) If the facility director decides to admit the person as a voluntary patient, he is required to state in the patient's record why informal admission is not suitable. (Ill. Rev. Stat. 1983, ch. 91½, par. 3—300(c).) A reason for denying a person informal admission must be noted in the person's records so that the director or others on the staff do not deny the person this form of admission "simply because they prefer to have more control over his release." Report, Governor's Commission for the Revision of the Mental Health Code of Illinois, at 39 (1976).

It cannot be reasonably said, based on the complaint's allegations against Condell, that the hospital assumed a duty of care to Holt under section 319 of the Restate-

ment (Second) of Torts (1965). The plaintiff alleges that Holt was a "patient," not that she had been involuntarily or voluntarily admitted or even that an emergency petition had been filed calling for her immediate hospitalization. One who admits himself under the informal procedures, as we must infer that Holt did here, is entitled to be released whenever he wishes during the facility's normal day-shift hours. (Ill. Rev. Stat. 1983, ch. 91½, par. 3—300; see also *In re Smith* (1986), 145 Ill. App. 3d 1002, 1005 (holding that a minor who had voluntarily admitted herself had a right to discharge, if requested, when the institution does not file a petition to detain her, as provided in section 3—813(a) of the Code (Ill. Rev. Stat. 1983, ch. 91½, par. 3—813(a))); *In re Whittenberg* (1986), 143 Ill. App. 3d 836, 838 (the circuit court could not order involuntary admission because a petition to detain a voluntary patient was filed more than five days after he sought discharge, contrary to provisions of the Code (Ill. Rev. Stat. 1983, ch. 91½, par. 3—403)).) The statutory requirements concerning the rights of persons entitled to discharge must be complied with because of the obvious liberty interests at stake. (*Addington v. Texas* (1979), 441 U.S. 418, 427, 60 L. Ed. 2d 323, 331-32, 99 S. Ct. 1804, 1810; see also *In re Hays* (1984), 102 Ill. 2d 314, 318-19; *In re Satterlee* (1986), 148 Ill. App. 3d 84, 86.) The Code also sets forth numerous sections intended to "provide extensive safeguards clearly intended to minimize the possibility of confinement of persons for whose protection, or the protection of others, confinement is unnecessary." *In re Stephenson* (1977), 67 Ill. 2d 544, 550-53 (various sections detailed); see also *In re Pritchett* (1986), 148 Ill. App. 3d 746, 749.

The appellate court here observed, "[i]t has been held that a mental hospital has a duty to control dangerous persons *committed to its custody.*" (Emphasis added.) (146 Ill. App. 3d 834, 839-40.) But even if we could infer,

as the appellate court did, that Condell is a mental hospital, we cannot infer that Holt had been committed to Condell's custody. The plaintiff acknowledges that he made no allegation that Holt was involuntarily admitted to Condell's custody or that she was a voluntary admittee for mental health treatment. Indeed, the plaintiff agrees with Condell's contention that Condell could not have obtained an order of involuntary admission in time to prevent what occurred here. Not even the minimum requirement for emergency admission—the filing of a petition setting out the need for immediate hospitalization—is alleged in the plaintiff's complaint to have been done. In cases where it was held there was a duty imposed on medical or penal institutions to protect third parties from harm, the institutions had custody of the dangerous persons through a court order or adjudication that gave them actual control over the individuals. (See, e.g., *Semler v. Psychiatric Institute of Washington, D.C.* (4th Cir. 1976), 538 F.2d 121, 125, *cert. denied* (1976), 429 U.S. 827, 50 L. Ed. 2d 90, 97 S. Ct. 83; *Abernathy v. United States* (8th Cir. 1985), 773 F.2d 184, 189-90; *White v. United States* (D.C. Cir. 1986), 780 F.2d 97, 103-04 (hospital was custodial ward and had duty to take reasonable steps to prevent harm).) There are no allegations in the complaint that Condell had such custody of Holt.

The plaintiff relies on three decisions concerning "special relationships" that he says would support the duty of care to a third party expressed in sections 315 through 319 of the Restatement (Second) of Torts (1965): *Comastro v. Village of Rosemont* (1984), 122 Ill. App. 3d 405; *Cross v. Chicago Housing Authority* (1979), 74 Ill. App. 3d 921, *aff'd* (1980), 82 Ill. 2d 313; and *Renslow v. Mennonite Hospital* (1977), 67 Ill. 2d 348. The *Comastro* and *Cross* decisions have no real relevance here as they concern the "special relationship" duties owed to busi-

ness invitees and to tenants, rather than, as claimed here, a duty to control a person known to have dangerous propensities. The plaintiff's reliance upon *Renslow* to support his claim that a hospital may owe a duty to a third party who is a stranger is also misplaced. In *Renslow*, a child not conceived at the time negligent acts were committed against its mother by a doctor and a hospital's employees was allowed to bring an action for that negligence directed against its mother. This court, in *Kirk v. Michael Reese Hospital & Medical Center* (1987), 117 Ill. 2d 507, recently discussed the duty found to exist in *Renslow*. The plaintiff in *Kirk* sued to recover against two drug manufacturers, the hospital, and two physicians for the injuries he suffered when a recently released patient, who had taken prescription drugs in the hospital and later drank alcohol, drove his car, in which the plaintiff was a passenger, against a tree, causing the plaintiff's injuries. This court rejected the plaintiff's contention that the defendants' alleged failure to warn the patient of the drugs' side effects created a duty that extended to third-party nonpatients. It also noted that the duty in *Renslow* was based primarily on the injury's being a direct result of alleged negligence to the infant's mother, and was limited to a certain type of special relationship: the former patient was the mother of the injured party. *Kirk v. Michael Reese Hospital & Medical Center* (1987), 117 Ill. 2d 517, 528.

We believe that the complaint's allegations do not support a conclusion that Condell had a duty to control Holt, which the plaintiff says would extend to include a duty in favor of his decedent. The plaintiff did not allege that Holt was involuntarily admitted to Condell or that there was an emergency petition filed with the facility director to do so. A pleader is required to set out the ultimate facts that support his cause of action (*People ex rel. Scott v. College Hills Corp.* (1982), 91 Ill. 2d 138,

145), and legal conclusions unsupported by allegations of specific facts are insufficient (Ill. Ann. Stat., ch. 110, par. 2—612, Historical & Practice Notes, at 299 (Smith-Hurd 1983); see also *Laufenberg v. Golab* (1982), 108 Ill. App. 3d 133, 137; *Hoffman v. Allstate Insurance Co.* (1980), 85 Ill. App. 3d 631, 633). "This court has repeatedly held that a complaint which does not allege facts, the existence of which are necessary to enable a plaintiff to recover, does not state a cause of action and that such deficiency may not be cured by liberal construction or argument." (*People ex rel. Kucharski v. Loop Mortgage Co.* (1969), 43 Ill. 2d 150, 152.) We consider that the complaint, without an allegation that Holt had been voluntarily or involuntarily admitted to its facility or that a petition had been filed for emergency admission, did not state facts showing Condell had a duty not to permit Holt to leave the hospital.

The plaintiff also contends, assuming *arguendo* that there was no common law duty owed by Condell, that once it attempted to restrain Holt, Condell assumed a duty through its voluntary actions to exercise due care in controlling Holt. Even though Condell had voluntarily and gratuitously undertaken the duty, the plaintiff says, relying on *Nelson v. Union Wire Rope Corp.* (1964), 31 Ill. 2d 69, 74, Condell was obligated in assuming the duty to discharge it with due care. Condell's calling the police to pursue Holt, the plaintiff also says, would not eliminate the duty Condell owed to Holt as a patient. We cannot agree. Even assuming that Condell gratuitously undertook the duty alleged here, Condell's call to the police concerning Holt was a reasonable measure to prevent harm to Holt and others and would fulfill its alleged duty. If Holt had been admitted to Condell as an involuntary admittee, the facility would have been authorized by the Code to request the police to apprehend her if the facility director considered that she needed immediate de-

tention for her own protection or that of others. (Ill. Rev. Stat. 1983, ch. 91½, par. 5—101.) Condell did that voluntarily. Too, it was reasonable for Condell to consider that the police, if they pursued Holt, would do so in a safe manner. The plaintiff's contention cannot withstand a motion to dismiss. *Laufenberg v. Golab* (1982), 108 Ill. App. 3d 133, 136.

Because we are in agreement with Condell's assertion that it owed no duty to Holt that would implicitly be extended to the plaintiff's decedent, we need not address Condell's arguments of the impossibility of satisfying such a duty and that a breach of the duty did not proximately cause the injuries.

For the reasons given, we reverse the appellate court's judgment in part and affirm it in part and affirm the trial court's dismissal of the counts against Condell.

*Appellate court reversed in part and affirmed in part; circuit court affirmed.*