ROSE AUGUSTE, Plaintiff-Appellant, v. MONTGOMERY WARD AND COMPANY, Defendant-Appellee.

First District (6th Division)   No. 1—92—2214

Opinion filed December 23, 1993.—Modified on denial of rehearing March 4, 1994.

Rosenberg & Rosenberg, P.C., of Chicago (Anthony J. Basile, of counsel), for appellant.

John J. Corbett and Yvonne M. Kaminski, both of John J. Corbett, Ltd., of Chicago, for appellee.

JUSTICE McNAMARA delivered the opinion of the court:
Plaintiff, Rose Auguste, brought this action to recover for injuries

she sustained when she fell on a stopped escalator located in a store owned and operated by defendant, Montgomery Ward and Company. The jury returned a verdict in favor of plaintiff and against defendant and codefendant, Otis Elevator Company, which had been servicing the escalators in defendant's store on the date plaintiff was injured. Thereafter, the trial court issued an order granting defendant's post-trial motion for judgment notwithstanding the verdict. The trial court held that defendant had no duty to warn plaintiff of, or otherwise protect her from, the risk of falling on the stopped escalator. It is from this order that plaintiff now appeals. (The court granted a new trial to Otis Elevator and stayed all proceedings as to Otis pending disposition of plaintiff's petition for leave to appeal. This court subsequently denied plaintiff's petition for leave to appeal as to Otis.)

The relevant facts are as follows. At approximately 4 p.m. on October 11, 1984, plaintiff arrived at the Montgomery Ward store in Skokie, Illinois, for a job interview. The store was situated on four levels, each connected by escalators. Although the escalators could run in either direction, there was generally one "up" and one "down" escalator between each level.

The escalator on which plaintiff was injured was a standard escalator consisting of grooved steps that originated from beneath a metal plate at the top of the escalator. The escalator was designed so that as it was running, the steps would remain level with the metal plate for 32 inches before they began to separate and descend. At the edge of the metal plate, there was a yellow strip that ran across the length of the step.

On the date in question, employees of Otis Elevator were performing routine maintenance on one of the escalators that ran between the ground floor and the second level. That escalator was barricaded and not available for use by the public. The second escalator that ran between the ground floor and second level was stopped. It was the practice of defendant to turn off the second escalator when the companion escalator was being repaired so customers could use it as an "up" or "down" stairway. The only other option for customers traveling between these two floors was to use the elevator.

Plaintiff testified that when she arrived at the store on October 11, she used the escalators to go from the ground floor to the third level, where her interview was to take place. All of the escalators she used were operating and she saw no one working on any of the escalators during the period she was in the store. Witnesses for defendant testified that both escalators between the first and second levels had been shut off the entire day.

After the interview, plaintiff took the "down" escalator from the third to the second level without incident. The escalator was functioning properly. When she arrived at the second floor, she turned to her left and walked two feet to the next escalator to descend to the first floor. In keeping with common practice, the escalator was turned off to allow customers to use it as a stationary stairway while the other escalator between the same floors was being serviced. Plaintiff did not notice that the escalator had been stopped. As she approached the escalator, she encountered a small metal plate approximately five inches in front of the first step of the escalator. She placed her left foot on the metal plate and began to slip. She attempted to grasp the handrail but lost her balance. In an attempt to regain her balance, plaintiff tried to place her right foot on the first step but was unable to because the step was not flat. A portion of the step was still underneath the metal plate. Plaintiff fell down the entire flight of escalator stairs and sustained injuries to her back. Plaintiff testified that the presence of grease on the plate was what caused her to slip.

On numerous prior occasions when an escalator was turned off, a sign informing customers of the availability and location of an elevator was posted by defendant. On the date in question, no such sign was posted.

After the close of plaintiff's case in chief, defendant filed a motion for a directed verdict. The trial court denied the motion and allowed the case to go to the jury on two issues: (1) defendant's failure to warn plaintiff of the condition of the escalator; and (2) defendant's failure to stop the escalator in a "proper" position. The trial court entered a directed verdict in favor of defendant on the issue of the presence of grease on the metal plate leading to the escalator.

At the conclusion of the trial, the jury found for plaintiff and assessed damages at $104,000. The jury further found plaintiff 50% comparatively negligent, resulting in a verdict of $52,000. The trial court subsequently granted defendant's motion for judgment *n.o.v.* The court concluded that defendant's duty of reasonable care did not encompass the risk that plaintiff would fail to notice that the escalator was not moving and be injured thereby. The court held that the condition of the escalator was open and obvious and not unreasonably dangerous. Under these circumstances, defendant did not have a duty to warn plaintiff of the condition. Nor did defendant owe plaintiff a duty to warn merely because it had voluntarily undertaken to inform customers in the past *vis-a-vis* posted signs whenever an escalator had been shut off.

"Directed verdicts or judgments *n.o.v.* ought to be entered only in those cases in which all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors [the] movant that no contrary verdict based on that evidence could ever stand." (*Ward v. K mart Corp.* (1990), 136 Ill. 2d 132, 139-40, 554 N.E.2d 223, 226; *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504.) To establish a cause of action based on negligence, the plaintiff must prove the existence of a duty of care on the part of the defendant, a breach of that duty, and an injury proximately caused by that breach. (*Wojdyla v. City of Park Ridge* (1992), 148 Ill. 2d 417, 592 N.E.2d 1098.) In the present case, the sole inquiry before us concerns the existence of a duty on the part of defendant. Duty is determined by asking "whether defendant and plaintiff stood in such a relationship to one another that the law imposed upon defendant an obligation of reasonable conduct for the benefit of plaintiff." (*Ward*, 136 Ill. 2d at 140, 554 N.E.2d at 226.) Whether a duty exists is a question of law to be determined by the trial court. *Wojdyla*, 148 Ill. 2d at 421, 592 N.E.2d at 1100; *Ward*, 136 Ill. 2d at 140, 554 N.E.2d at 226.

Factors which are relevant to the existence of a legal duty include the "reasonable foreseeability" of an injury, the likelihood of injury, the magnitude of the burden of guarding against it, and the consequences of placing that burden upon the defendant. *Ward*, 136 Ill. 2d 132, 554 N.E.2d 223.

Plaintiff presents two arguments to support her view that defendant owed her a duty of care. She argues first that a duty to warn existed because the condition of the escalator, although "open and obvious," was unreasonably dangerous such that the risk of harm could not be eliminated without adequate warning despite plaintiff's exercise of reasonable care. She also argues that a duty to warn arose by virtue of defendant's voluntary practice of posting notices in the past whenever an escalator had been turned off.

In Illinois an owner or occupant of land owes his invitees a duty to exercise reasonable care under the circumstances regarding the condition of the premises or acts committed thereon. (*Ward*, 136 Ill. 2d at 141.) In conjunction with the common law rule governing a landowner's or occupant's duty to invitees, there evolved a principle that the owner or occupant was not liable to entrants on his premises for harm caused by a condition on the premises of which the entrant was aware or which was obvious. (*Genaust v. Illinois Power Co.* (1976), 62 Ill. 2d 456, 343 N.E.2d 465; *Longnecker v. Illinois Power Co.* (1978), 64 Ill. App. 3d 634, 381 N.E.2d 709; *Ragni v. Lincoln-Devon Bounceland, Inc.* (1968), 91 Ill. App. 2d 172, 234 N.E.2d 168.) In *Ward*,

however, our supreme court expressly adopted an exception to this general rule which would extend a defendant's duty of reasonable care to the risk posed by an open and obvious condition, where the defendant could have reasonably anticipated that the plaintiff in the exercise of ordinary care would fail to avoid the risk due to distraction or momentary forgetfulness. (*Ward*, 136 Ill. 2d at 156, 554 N.E.2d at 234.) Under such circumstances, the condition would be considered unreasonably dangerous. *Ward*, 136 Ill. 2d 132, 554 N.E.2d 223.

In *Ward*, the plaintiff, a customer at the defendant's store, was injured when he walked into a concrete post located immediately outside a customer exit door. The post stood approximately five feet high and was one of two posts that were situated three feet apart on either side of a door marked "customer entrance," and located approximately 19 inches away from the building. Because he was carrying a large bathroom mirror approximately 5 feet long and 1½ feet wide as he exited through the door, the plaintiff did not see the post in time to avoid it. In concluding that the defendant's duty of reasonable care extended to the risk encountered by plaintiff, namely, colliding with the concrete post, the supreme court looked to the surrounding circumstances, including the fact that the exit door was located in a section of the store that sold a number of large, bulky items, that no other means of exit were available to the plaintiff in that area of the store, and that the defendant knew that other customers sometimes brushed up against the posts when exiting through the same door. The court held that the close proximity of the post to the exit made it dangerous to customers who, foreseeably, would be carrying large packages from that exit and whose vision might be impaired thereby. The court further held that the simple displaying of a sign near the exit would remind distracted or forgetful customers of the presence of the posts.

Plaintiff argues that the exception set forth in *Ward* is applicable here. In her brief, plaintiff contends that she was distracted "by virtue of having just successfully come off of an operating escalator and confronted with one that was stopped." Such a distraction, plaintiff maintains, was one induced by defendant for which it should be held accountable. We are unpersuaded by this contention. In our view, plaintiff's failure to notice the stopped escalator arose not from a distraction created by defendant but rather from her own lack of attention to her surroundings. At trial, plaintiff testified that she never looked at the stopped escalator, and in her brief admitted that she just "figured" the escalator would be operating. What plaintiff encountered instead was a stationary stairway accompanied by all of

the normal risks associated with any other stairway. This is not evidence of a "distraction" that defendant should have reasonably anticipated, as the concrete post was under the circumstances in *Ward*.

Plaintiff herself admits that, in most cases, there is nothing dangerous about a stopped escalator which is open and obvious to anyone who is exercising reasonable care for his or her own safety. Inherent in this admission is plaintiff's acknowledgement of the standard risks which the use of stairs creates. The fact that stairs, by their very nature, create a risk that persons using them might be injured by a fall does not make them unreasonably dangerous. (*Glass v. Morgan Guaranty Trust Co.* (1992), 238 Ill. App. 3d 355, 606 N.E.2d 384.) Stairs only become unreasonably dangerous when, under the circumstances of a particular case, the defendant in the exercise of reasonable care should anticipate that the plaintiff will fail to see them. (*Ward*, 136 Ill. 2d at 152, 554 N.E.2d at 232.) Only then does a duty to warn or otherwise guard against an injury arise on the part of the defendant as part of his general duty of reasonable care. *Ward*, 136 Ill. 2d 132, 564 N.E.2d 223.

■ Under the circumstances here, we hold that defendant did not have a duty to warn plaintiff that the escalator had been turned off. We agree with the trial court that the stopped escalator was open and obvious, and defendant had no reason to expect that plaintiff's attention would be distracted while negotiating the escalator. There was nothing obstructing plaintiff's view of the escalator as she turned the corner to descend it. Significantly, other customers and employees used the escalator as a stationary stairway on the date plaintiff was injured and on other days, without incident, notwithstanding that many of them undoubtedly had just come off a moving escalator. We find that defendant did not have a duty to warn plaintiff of the condition.

■ In light of our conclusion that the condition of the escalator was open and obvious and not unreasonably dangerous to an invitee exercising reasonable care for her own safety, we must necessarily agree with the trial court's finding that defendant, in addition to having no duty to warn plaintiff that the escalator was stopped, had no duty to ensure that the escalator was stopped in a "proper position." Plaintiff complained that a proximate cause of her injury was the uneven position of the top stairs when the escalator was shut off. We agree with defendant that it is a matter of common knowledge that escalators are either running or they are stopped, and the position the steps are in when stopped is merely a fortuitous circumstance which defendant could not have been expected to guard against.

Plaintiff also contends that defendant assumed a duty to warn her of the presence of the stopped escalator based on its past practice of posting signs informing customers of the availability and location of an elevator whenever an escalator was not operating. In denying defendant's motion for a directed verdict, the trial court initially agreed with this contention. However, at the hearing on defendant's post-trial motion, the trial court, relying on *Cwik v. Forest Preserve District* (1958), 131 Ill. App. 3d 1097, 477 N.E.2d 21, reversed its position, holding that defendant did not assume a continuing legal duty to warn merely because it had posted signs in the past.

In *Cwik*, the plaintiffs were injured while snowmobiling on property owned and operated by the defendant. The plaintiffs' snowmobile struck some pillars and a steel cable which were partially covered by snow and therefore not visible. On previous occasions, the defendant had marked the area around the pillars and cable with picnic tables or other large objects to alert snowmobilers to the location of the obstacles. On the date in question, the area was not marked. Plaintiffs alleged that since defendant knew about the pillars and cable and had marked the area on previous occasions, defendant voluntarily assumed a duty toward plaintiffs to warn them as well. We rejected this argument, holding that a defendant's conduct on prior occasions is not sufficient to establish a voluntary assumption of a duty towards another. (*Cwik*, 131 Ill. App. 3d 1097, 477 N.E.2d 21.) We further held that "[o]ne who has gratuitously assumed to protect others against injury is under no obligation to continue that protection indefinitely." *Cwik*, 131 Ill. App. 3d at 1099, 477 N.E.2d at 23; see also *Chisolm v. Stephens* (1977), 47 Ill. App. 3d 999, 365 N.E.2d 80.

■ Applying our holding in *Cwik* to the present case, we agree with the trial court that defendant did not voluntarily assume a duty to warn plaintiff that the escalator was not moving merely because it had done so in the past. Moreover, even had plaintiff shown that she relied upon defendant's posting of signs in the past—which she did not—we would reach the same conclusion. See *Chisolm*, 47 Ill. App. 3d 999, 365 N.E.2d 80.

Plaintiff argues, however, that our supreme court's holding in *Nelson v. Union Wire Rope Corp.* (1964), 31 Ill. 2d 69, 199 N.E.2d 769, contradicts this court's holding in *Cwik*. We do not agree. In *Nelson*, the issue was not whether the defendant owed the plaintiffs a duty to continue some voluntary action—in that case, the safety inspection of a construction site—but whether, after having undertaken to perform such inspections, it owed a duty to perform the inspections with due care. The *Nelson* court did not address the issue of whether the defendant's voluntary inspections created a duty to continue

872

performing those inspections indefinitely. Accordingly, we find *Nelson* to be inapposite to the present case.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

EGAN, P.J., and RAKOWSKI, J., concur.