ROSALINDA HERNANDEZ, Indiv. and as Mother of B.H., a Minor, Plaintiff-Appellant, v. RAPID BUS COMPANY, Defendant-Appellee (Chicago Board of Education *et al.*, Defendants).

First District (4th Division)   No. 1—93—3088

Opinion filed October 6, 1994.

Sachs, Earnest & Associates, Ltd., of Chicago (Gregory R. Sun, of counsel), for appellant.

Heineke, Burke, Healy & Bodach, of Chicago (Mary Beth O'Brien, of counsel), for appellee.

PRESIDING JUSTICE HOFFMAN delivered the opinion of the court:

The plaintiff, Rosalinda Hernandez, individually and as mother and next friend of B.H., appeals from an order of the circuit court of Cook County granting summary judgment in favor of the defendant, Rapid Bus Company (Rapid). For the reasons which follow, we reverse the judgment of the trial court.

According to count I of the plaintiff's second-amended complaint, B.H. was attacked and raped by a fellow student as she walked unescorted from one of Rapid's buses to the Mary Lyons School on April 25, 1985. The plaintiff alleged that Rapid voluntarily provided

attendants who rode its buses and escorted special education students into school and that she relied upon the continuation of that escort service for the benefit of her daughter. The complaint also alleges that although Rapid was aware that a number of the special education students riding its bus with B.H. had a propensity toward violent and criminal behavior, on the day that B.H. was raped, its bus driver failed to either escort the students into school or observe them until they had safely entered the school. Instead, the driver merely drove off after the students had exited the bus. The complaint charges that Rapid was negligent in failing to ensure B.H. was safely escorted into the school building and in failing to warn the plaintiff that her daughter would not be escorted into school.

Rapid moved for summary judgment arguing that it did not have a duty to escort B.H. from its bus into the school building or to protect her from a criminal attack by a fellow student. Rapid contended that contrary to the plaintiff's allegations, it merely provided transportation services for the students and that the Chicago Board of Education (Board) had assumed an obligation to escort special education students from its bus to the school building. Rapid relied upon the depositions of Kenneth Deiml, the principal of Mary Lyons School, Conception Ocampo, a teacher's aide, and B.H. Rapid argued the testimony of Deiml and B.H. established that Gertrude Frye, a Board employee charged with the responsibility of escorting the special education students into the school building, was present on its bus when it arrived at Mary Lyons School on the day that B.H. was raped.

The plaintiff's response to Rapid's motion was supported by Frye's deposition, who denied being present on the bus when it arrived at Mary Lyons School on the day B.H. was raped. She testified that Rapid changed its route some time prior to that day, and it required her to exit the bus at Scammon School leaving B.H. and the other special education students who remained on the bus without an escort to Mary Lyons School. Frye testified that when she was informed of the route change, she told a supervisor at Rapid's garage that she could not be responsible for the Mary Lyons students who remained on the bus after she was required to exit at Scammon School. According to her, Rapid's supervisor stated that the bus driver would take the remaining children to Mary Lyons School. Subsequently, the bus driver told Frye that she made sure the students went into the school building. Based upon this testimony, the plaintiff argued that there were questions of fact as to whether Frye was present on Rapid's bus when it arrived at Mary Lyons School on the day in question, and whether Rapid voluntarily undertook to escort B.H. and the other special education students attending Mary Lyons School into the school building.

In its reply memorandum, Rapid argued that even if a question of fact existed on the issue of whether Frye was on its bus when it arrived at Mary Lyons School, summary judgment was still appropriate because it did not have a duty to escort B.H. from the bus to the school entrance or to protect her from an unforeseen attack by a fellow student.

The plaintiff filed a surreply contending that questions of fact existed on the issues of whether Rapid should have foreseen that one of the special education students might be harmed if they were not escorted from the bus to the school entrance and whether Rapid was on notice of the violent propensities of B.H.'s assailant when it discharged both of them from its bus unescorted.

In granting summary judgment in favor of Rapid, the circuit court found that there was no genuine issue of fact as to Rapid's prior knowledge of the assailant's violent propensities. As a result, the rape of B.H. was unforeseeable and Rapid had no duty to protect her from it. The plaintiff now appeals.

OPINION

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. (735 ILCS 5/2—1005(c) (West 1992); *Carruthers v. B.C. Christopher & Co.* (1974), 57 Ill. 2d 376, 313 N.E.2d 457.) In ruling on a motion for summary judgment, the court must construe the pleadings and evidentiary material on file strictly against the movant. (*Kolakowski v. Voris* (1980), 83 Ill. 2d 388, 415 N.E.2d 397.) If the evidentiary material before the court could lead to more than one reasonable conclusion or inference, the court must adopt the conclusion or inference that is the most favorable to the opponent of the motion. *Lapidot v. Memorial Medical Center* (1986), 144 Ill. App. 3d 141, 494 N.E.2d 838.

In urging reversal of the summary judgment, the plaintiff argues that by changing its bus route, Rapid prevented Frye from escorting the Mary Lyons students from the time they exited its bus until they were safely in the school and thereby undertook a duty to protect B.H. until she entered the school. The plaintiff's argument rests upon the proposition that Rapid negligently interfered with B.H.'s opportunity of obtaining assistance, thus rendering it liable for the foreseeable consequences of its actions including the criminal behavior of B.H.'s assailant. See *Houren v. Chicago, Milwaukee & St. Paul Ry. Co.* (1908), 236 Ill. 620, 86 N.E. 611; W. Keeton, Prosser & Keeton on Torts § 56, at 382 (5th ed. 1984).

Rapid counters that it owed no duty to B.H. under the circum-

stances of this case for three reasons: first, it never undertook a duty to escort children from its buses into their schools; second, B.H. was raped on the Board's property over which Rapid had no duty of maintenance or management; and third, it was unforeseeable that B.H. would be raped by a fellow student.

Because the trial court held that Rapid did not owe a duty to protect B.H. from a criminal act by a fellow student, we focus our review on whether Rapid had such a duty under the circumstances of this case. While the duty question presented by this appeal is essentially one of law (*Rowe v. State Bank* (1988), 125 Ill. 2d 203, 531 N.E.2d 1358), it cannot be decided in a factual vacuum. The legal determination of whether a duty exists upon which tort liability can be predicated is dependent upon the factual circumstances giving rise to the litigation. (*Robinson v. The Suitery, Ltd.* (1988), 172 Ill. App. 3d 359, 526 N.E.2d 566.) When, as in this case, such a determination is made in a summary judgment proceeding, the facts taken from the pleadings and evidentiary material on file must be viewed in the light most favorable to the plaintiff. (*Rowe*, 125 Ill. 2d 203, 531 N.E.2d 1358.) Consequently, we base our decision in this case upon the following facts derived from our independent examination of the pleadings and depositions on file when the trial court entered the order appealed from, each construed in its light most favorable to the plaintiff.

Rapid transported children from their homes to various Chicago public schools under a contract with the Board. One of Rapid's buses was assigned to transport special education students to both Scammon School and Mary Lyons School. Both B.H. and her assailant were enrolled in special education classes conducted at Mary Lyons School and rode the same bus operated by Rapid. The special education classes included children who were emotionally and behaviorally disturbed as well as children with learning disabilities. The Board employed a group of employees known as "child welfare attendants" whose duties included riding the buses that transported special education students from their homes to their assigned schools. The function of these child welfare attendants was to supervise the conduct and safety of the special education students while on their assigned buses and to escort them from the bus into the school building. All buses transporting special education students had child welfare attendants assigned to them, and they were the only buses to which the Board assigned attendants to ride with the students.

For a period of time prior to the occurrence giving rise to this litigation, Frye was a child welfare attendant employed by the Board and assigned to Scammon School. One of her duties was to ride on

Rapid's bus transporting special education students attending both Scammon School and Mary Lyons School. After picking up the children at their homes, the bus would first stop at Mary Lyons School, where the students attending that school would exit and Frye would escort them to the school door. Frye would then ride the bus to Scammon School, where she would exit with those students and accompany them into the school. She remained at Scammon, where she performed other duties assigned to her until the end of the school day when she would again ride the bus as it transported the children back to their homes.

At some point in time, which Frye estimated to be a week to a month before the day B.H. was raped, Rapid's bus driver informed Frye of a change in the bus route. After the route change, the bus stopped first at Scammon School and after the Scammon School students exited, the bus went to Mary Lyons School. Frye was informed that she would be required to exit the bus when it stopped at Scammon School because it would not return her to Scammon School after it stopped at Mary Lyons School. One day after being informed of the route change, Frye told a supervisor at Rapid's garage that the route change would prevent her from remaining on the bus and escorting the Mary Lyons students, and that she could not be responsible for those students after she exited the bus at Scammon School. Rapid's supervisor told Frye that the bus driver would take the remaining children to Mary Lyons School. Frye also informed the Board of the route change and the effect that the change would have on her ability to supervise the students traveling to Mary Lyons School.

Although disputed by Deiml and B.H., Frye testified that she was not on Rapid's bus when it arrived at Mary Lyons School on the day B.H. was raped because she had exited the bus when it stopped at Scammon School. Also, although disputed by Deiml, B.H. testified that she and the other special education students exited the bus unescorted and proceeded toward the school door. Before she could enter the school, B.H. was accosted and raped by another special education student attending Mary Lyons School who rode the same bus.

Based upon these facts, we disagree with the plaintiff's contention that Rapid interfered with B.H.'s opportunity of obtaining assistance. Even interpreting Frye's deposition in its light most favorable to the plaintiff, the only reasonable inference that can be drawn is that after Rapid changed its bus route, Frye was informed that she would not be transported back to Scammon School after the bus stopped at Mary Lyons School. Nothing in the record suggests that she would have been prohibited from riding on the bus if she found an alternate

means of returning to Scammon School or that the Board was in any way prohibited from assigning another child welfare attendant to supervise and escort the Mary Lyons special education students. (See Restatement (Second) of Torts § 327 (1965).) Notwithstanding our conclusion on this issue, because our review of an order granting summary judgment is *de novo* (*In re Estate of Hoover* (1993), 155 Ill. 2d 402, 615 N.E.2d 736), we are still faced with the task of determining whether the trial court was correct in ruling that Rapid was entitled to judgment as a matter of law (*Schmolke v. Highland Butterfield, Inc.* (1984), 128 Ill. App. 3d 710, 471 N.E.2d 226).

Generally speaking, Illinois law does not impose a duty to protect another from a criminal attack by a third person unless the attack is reasonably foreseeable and the parties stand in one of four "special relationships," namely: (1) common carrier and passenger, (2) innkeeper and guest, (3) business invitor and invitee, and (4) voluntary custodian and protectee. (*Fancil v. Q.S.E. Foods, Inc.* (1975), 60 Ill. 2d 552, 328 N.E.2d 538, citing Restatement (Second) of Torts § 314A (1965); see *Rowe*, 125 Ill. 2d at 215-16.) As Rapid correctly argues, any duty owed to B.H. by virtue of its status as a common carrier and her status as its passenger ended when she exited its bus safely, a fact which is not in dispute in this case. (*Wasserman v. City of Chicago* (1989), 190 Ill. App. 3d 1064, 547 N.E.2d 486.) Of the four special relationships, only the duty owed by a voluntary custodian to its protectee merits discussion under the facts of this case. That relationship exists when one voluntarily takes custody of another under such circumstances that deprive the other of normal opportunities for protection. (*Fancil*, 60 Ill. 2d 552, 328 N.E.2d 538; Restatement (Second) of Torts § 314A (1965).) But, as we noted earlier, nothing in the facts of this case supports the conclusion that Rapid deprived B.H. of any of her normal opportunities for protection.

However, even in the absence of one of the four special relationships, one may be held liable for the criminal acts of a third party under the theory of negligence in the performance of a voluntary undertaking. (*Rowe*, 125 Ill. 2d 203, 531 N.E.2d 1358.) Illinois has adopted section 324A of the Restatement (Second) of Torts (*Scott & Fetzer Co. v. Montgomery Ward & Co.* (1986), 112 Ill. 2d 378, 493 N.E.2d 1022), which states in pertinent part:

> "One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if
> ***

(b) he has undertaken to perform a duty owed by the other to the third person." Restatement (Second) of Torts § 324A (1965).

Clearly, the record in this case supports the conclusion that the Board assumed a duty to supervise B.H. and the other special education students being transported in Rapid's bus and to escort them from the bus to the door of Mary Lyons School. Based upon Frye's testimony of her conversations with Rapid's supervisor and its bus driver, we believe the record also supports the inference that Rapid voluntarily undertook to perform those duties in Frye's absence. However, even under circumstances that might arguably give rise to the application of section 324A, the occurrence for which tort recovery is sought must have been reasonably foreseeable. *Mazzone v. Chicago & North Western Transportation Co.* (1992), 226 Ill. App. 3d 56, 589 N.E.2d 632.

In granting summary judgment in favor of Rapid, the trial court found that there was no genuine issue of fact as to whether Rapid was on notice that B.H.'s assailant had any criminal propensity and, as a consequence, her rape was unforeseeable. We disagree.

In her complaint, the plaintiff alleged that Rapid knew a number of the special education students riding its bus with B.H. had a propensity toward violent and criminal behavior. In support of its motion for summary judgment, Rapid introduced evidence that Deiml, the Board, and B.H. had no prior knowledge of any violent propensities on the part of the assailant; however, it introduced nothing as to its own knowledge in that regard. The issue of foreseeability before the trial court rested upon the knowledge of Rapid, not the knowledge of Deiml, the Board, or B.H. The movant in a summary judgment proceeding is the burdened party. The respondent has no obligation to submit evidentiary material in support of the allegations in her complaint until the movant has first come forward with evidentiary material contradicting those allegations. In the absence of evidentiary material submitted by the movant, the respondent can rely upon the allegations in her complaint to establish a genuine issue of fact. *Kielbasa v. St. Mary of Nazareth Hospital* (1991), 209 Ill. App. 3d 401, 568 N.E.2d 208.

Further, both Rapid and the trial court focused their attention on the issue of whether Rapid was on notice of the criminal propensities of the particular student that raped B.H. However, to satisfy the foreseeability component of a duty analysis, it is not necessary that the defendant must have foreseen the precise harm that did in fact occur; it is sufficient if at the time of the defendant's action or inaction, a reasonably prudent person should have foreseen

526

some harm to another as likely to occur. (*Slager v. Commonwealth Edison Co.* (1992), 230 Ill. App. 3d 894, 595 N.E.2d 1097.) As such, it was not necessary that Rapid knew the actual assailant had any criminal propensities; it is sufficient if, as the plaintiff alleged, Rapid was aware that some of the special education students riding its bus with B.H. had propensities toward violent and criminal behavior.

We conclude that the pleadings and depositions on file in this case do not establish Rapid's right to judgment as a matter of law. Consequently, we reverse the judgment of the trial court and remand this case for further proceedings.

Reversed and remanded.

JOHNSON and CAHILL, JJ., concur.