**Donovan A. REID, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 05–87–00224–CR.

Court of Appeals of Texas,
Dallas.

March 31, 1988.

Rehearing Denied May 9, 1988.

Roy L. Merrill, Dallas, for appellant.

John Vance, Dist. Atty., Michael A. Klein, Asst. Dist. Atty., Dallas, for appellee.

Before WHITHAM, McCLUNG and STEWART, JJ.

McCLUNG, Justice.

Donovan A. Reid was tried before a jury and convicted of possession of marijuana in an amount of five pounds or less but more than four ounces. Punishment was assessed at ten years in the Texas Department of Corrections and a five-thousand-dollar fine. In nine points of error, appellant contends that: (1) the evidence is insufficient to support his conviction; (2) improper evidence was introduced at trial; (3) the trial court erred in rejecting the jury's verdict finding appellant guilty of misdemeanor possession of marijuana; (4) the trial court erred in overruling appellant's objection to additional jury instructions; (5) the trial court erred in instructing a verdict of guilty; (6) the jury was allowed to separate without the consent of the appellant before they had returned a verdict; and (7) the trial court erred in overruling, without a hearing, appellant's motion to enforce the guaranties contained in the Texas Constitution against cruel and unusual punishment. Because we agree that the jury was improperly allowed to separate after receiving the charge, we reverse the judgment of the trial court and remand the cause for a new trial.

On June 17, 1986, at approximately 3:00 A.M., appellant and his companion were stopped by two Dallas police officers for driving with no headlights. When the pa-

trol car pulled up behind appellant's automobile one officer noticed that the tags were expired on the vehicle. Appellant stopped his vehicle, jumped out of the car, and began walking up to the patrol car. He was ordered back into his vehicle. The officers approached appellant and his companion and asked for appellant's driver's license as well as his proof of liability insurance. Appellant replied that his license was in the trunk. He was then requested to leave the vehicle and step to the rear of the car. When appellant stepped from the automobile the officer nearest appellant observed that he was wearing a ballistics vest. Appellant was given a pat-down search which revealed a loaded pistol. Appellant's companion was also carrying a loaded pistol. Additional police officers were then called to the scene. The car was searched and inside the car was a large marijuana cigarette burning in the ashtray. Rolling paper and other drug related paraphernalia was also found in the interior of the car. A search of the trunk revealed appellant's expired New York state driver's license, as well as approximately $15,000 in cash, 400 packaged envelopes of marijuana weighing slightly under five pounds, and additional paraphernalia. Marijuana seeds were also found in appellant's front pocket. It was later discovered that the automobile was a Hertz rental unit which had been rented in the name of appellant's brother.

Appellant and his companion were then arrested. Appellant vigorously resisted arrest and during the course of the arrest bit one officer on the hand. After appellant was secured one officer "joked" to another officer that "I think what we ought to do is take the dope and the money and turn him loose and see how he can explain it." Appellant replied "It does (sic) make make [sic] any difference to me. I can make that much money in one run. I can make more money than you ever think of making".

■ In appellant's first point of error he asserts that the evidence is insufficient to support the conviction because there is no evidence that he had knowledge of the mar-

ijuana in the trunk of the car. In evaluating the sufficiency of the evidence for a criminal conviction, the standard is whether, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2788–89, 61 L.Ed.2d 560 (1979). In order to sustain a conviction of possession of a controlled substance the state must show: (1) the accused exercised care, control and management of the contraband; and (2) the accused knew what he possessed was contraband. *Humason v. State*, 728 S.W.2d 363, 364 (Tex.Crim.App.1987); *Dickey v. State*, 693 S.W.2d 386, 389 (Tex.Crim.App. 1984). Possession means more than being "where the action is"; it involves the exercise of dominion and control over the contraband allegedly possessed. *McGoldrick v. State*, 682 S.W.2d 573, 578 (Tex.Crim. App.1985). Where the accused is not shown to be in exclusive control or possession of the place where the contraband is found, it cannot be concluded that the accused had knowledge and control over the contraband unless there are additional independent facts and circumstances which link the accused to the contraband. *Cude v. State*, 716 S.W.2d 46, 47 (Tex.Crim.App. 1986); *Flores v. State*, 650 S.W.2d 429, 430 (Tex.Crim.App.1983) There is no set "formula" of facts which would dictate a finding of an "affirmative link" sufficient to support an inference of knowing possession of contraband. Each case depends on the evidence adduced therein. *See Humason*, 728 S.W.2d at 367; *Patterson v. State*, 723 S.W.2d 308, 311 (Tex.App.—Austin 1987, pet. granted).

■ Being mindful of the above guidelines, we now examine the testimony in this case. When asked for his driver's license, the appellant told the officers that it was in the trunk. This statement was true and is probative evidence that appellant had knowledge of what was in the trunk, including the contraband. Appellant was

also discovered wearing a bulletproof vest and carrying a loaded weapon. Appellant's companion was also heavily armed. There was approximately $15,000 in cash and bags of marijuana packaged for distribution in the trunk. A rational trier of fact could only conclude that appellant and his companion were exercising dominion and control over the cash and marijuana. Indeed, appellant and his companion were equipped and ready to protect and defend their illegal cargo from anyone of a mind to take it from them. Further, appellant made an incriminating statement at the scene and attempted to flee from the officers. In addition, appellant was found with marijuana on his person and a lit marijuana cigarette was in the ashtray of the car. We conclude that the evidence is sufficient to support the conviction. Appellant's first point of error is overruled.

■ In appellant's second point of error he maintains that the trial court erred in allowing a police officer to testify that when she saw appellant wearing a ballistics vest and carrying a pistol that it went through her mind that appellant "probably would have shot me. That's what I thought he was going to do." Assuming, arguendo, such testimony was inadmissible we hold any error in admitting this testimony was harmless. The evidence as to appellant's guilt was overwhelming. In addition, the trial court sentenced appellant and, because the trial court is presumed to disregard inadmissible evidence, e.g. *Johnson v. State*, 478 S.W.2d 442, 444 (Tex. Crim.App.1972), we presume the testimony did not affect his sentence, especially considering the totality of the facts in the record here. Appellant's second point of error is overruled.

■ Appellant next complains that the trial court admitted over objection the following testimony:

Q. (By Mr. Stalcup) Officer Byerly, why did you not take fingerprints on the evidence that you offered—tagged and offered into the property room?

MR. MERRILL: Further object on—it calls for the state of mind of the witness.

THE COURT: Overruled. You may answer.

A. (By the Witness) I felt no need for fingerprinting any of the evidence.

Q. (By Mr. Stalcup) Okay. Why not?

MR. MERRILL: Object to that. It calls for opinion on—invasion of province of the jury and calls for opinion on guilt or innocence of the defendant, co-defendants. Highly prejudicial, Your Honor. Hearsay. No proper predicate for that kind of opinion testimony. Respectfully object on all those grounds.

THE COURT: Mr. Stalcup?

MR. STALCUP: Your Honor the State would submit that the question and response had—has nothing to do with hearsay and the questions calls for the reason he didn't take fingerprints of the evidence that was placed in the property room after defense counsel opened the door to fingerprints on this particular evidence and this particular case. We find it's relevant to the issue at hand.

THE COURT: All right. Overrule the objection. You may answer.

Q. (By Mr. Stalcup) You may proceed.

A. (By the Witness) I do not—I felt no need to fingerprint anything that I found in his possession.

We must initially state that we do not agree with appellant that this testimony was "hearsay", "highly prejudicial" or that "no proper predicate" was laid. On cross-examination, appellant educed from this witness that he had made no effort to preserve any fingerprints that might have been on the bags of marijuana in the trunk. Appellant's attorney also asked this witness if the reason he was testifying against appellant was because charges alleging aggravated assault by appellant against another officer had been dropped. In sum, the cross-examination was designed to

show that this officer may have been angry at appellant because appellant had injured a fellow officer and had not been prosecuted. Consequently, the officer may be out to "get" appellant and might even go so far as not fingerprinting the bags of marijuana because appellant's prints may not be on them. On redirect examination, the testimony complained of by appellant was admitted. We hold the trial court properly admitted this testimony. First, this line of questioning was invited by appellant's attempt to discredit the officer for not fingerprinting the bags of marijuana. Consequently, appellant cannot now complain of the testimony, *See Hewitt v. State*, 734 S.W.2d 745, 751 (Tex.App.—Ft. Worth 1987, no pet.); *Ledesma v. State*, 650 S.W. 2d 164, 167 (Tex.App.—San Antonio 1983, no pet.). Second, a lay witness may testify in the form of an opinion if the opinion is rationally based on the perception of the witness and helpful to a clear understanding of his testimony. TEX.R.CRIM. EVID. 701. Testimony in the form of an opinion otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact. *See* TEX.R.CRIM.EVID. 704. We hold this testimony admissible under rule 701. Third, we conclude from an examination of the record that even assuming, arguendo, such testimony was error, it was harmless error. Appellant's third point of error is overruled.

Appellant's next assertion is that the trial court erred in overruling his motion for a mistrial after the state introduced evidence that a machine gun clip was found in the trunk of appellant's car. Specifically, appellant complains of the following exchange.

Q. Okay. And, what did you discover, if anything, inside the car?

A. Inside the vehicle, in the ashtray—the open ashtray, in plain view was a large marijuana cigarette.

Q. Okay.

A. In the trunk of the vehicle were—there several large clear plastic bags, each of those having manila envelopes in them. And, each manila envelope was filled with marijuana, that appeared to be packaged for sale.

And, there was a total of 400 packaged envelopes of marijuana weighing somewhere under five pounds. There was, also, a large quantity of cash, which after being counted I remember it came out to over $15,000. I can't remember exactly the total amount. There was, also, a large—what's called banana clip for holding a large number of rounds for, I believe, Oozzy (phonetic) machine gun.

THE COURT: Wait a minute. Let me see the lawyers.

(Whereupon, the following proceedings were held outside the hearing of the jury.)

THE COURT: Okay. Now, the Court, in granting the defendant a running objection, meant to grant the defendant a running objection as to the marijuana, if any, contained in the trunk and not any other extraneous matters. So, if you're going to—

MR. MERRILL: For the record, now, I respectfully object to machine gun clip or whatever it's called, for the same reasons that heretofore were stated. And, I further object on the grounds that under the Motion for Discovery and extraneous offenses, I've only been led to believe there was two weapons and bullets for those weapons. And, until this part of the trial I never had been indicated by anybody in anyway there's a machine gun involved. And, I object on the grounds of surprise, lack of compliance with the pretrial discovery motions, and I respectfully move for a mistrial because of surprise.

MR. STALCUP: Your Honor, the witness never said there was a machine gun in the trunk. He said there was a type of ammo used by the machine gun.

THE COURT: I'll sustain the defendant's objection. Anything regarding

any other weapon or anything else in the trunk other than the marijuana—

MR. MERRILL: And, I respectfully move the Court to instruct the jury to disregard the last answer of the witness and I respectfully move for a mistrial after—because it's too prejudicial and I'm too much taken by surprise about a machine gun. Total surprise.

MR. STALCUP: Judge, I need to hear what you were going to finish saying. What else was in the instruction?

THE COURT: Okay. What else was in the trunk?

MR. STALCUP: The brown bag that— the defendant's brown bag. Had personal—his belongings in it, his I.D.

THE COURT: Okay. But, was there any extraneous—

MR. ANDERSON: Any other drugs or guns?

MR. STALCUP: No other drugs and guns.

THE COURT: Any other extraneous offenses is what I'm talking about.

MR. STALCUP: Yeah. There was paraphernalia in the brown bag.

THE COURT: What?

MR. STALCUP: Papers. Marijuana papers.

THE COURT: If it's relative to marijuana, I'll let you do it, but the court will sustain the defendant's objection to anything about a pistol or machine gun bullet clip or banana clip or whatever.

MR. STALCUP: Okay.

THE COURT: And we'll instruct the jury to disregard any testimony—off the record.

(Whereupon, an off the record discussion was had.)

(Whereupon the following proceedings were had in the presence of the jury.)

MR. STALCUP: May I proceed, Your Honor?

THE COURT: Now, ladies and gentlemen, the Court will instruct you that if there's any testimony in this case regarding any other weapon, any other bullet clip or whatever's been referred to, if any, you will disregard that and not consider that for any purpose whatsoever in this trial. Disregard that completely, if there's any other testimony about any other weapons other than the two pistols that have been introduced into evidence in this case. You may proceed.

MR. MERRILL: For the record, I would respectfully renew my Motion for Mistrial, Your Honor.

THE COURT: Overruled. You may proceed.

Any error in asking an improper question or in admitting improper testimony is cured or rendered harmless by a withdrawal of such testimony and an instruction to disregard unless the question or the evidence is clearly calculated to inflame the minds of the jury and is of such character that it is impossible to withdraw the impression produced on the minds of the jury. *Guzmon v. State*, 697 S.W.2d 404, 408 (Tex.Crim.App.1985); *Carter v. State*, 614 S.W.2d 821, 824–25 (Tex.Crim. App.1981). In determining whether a jury instruction is sufficient to cure the error, the facts of each particular case must be noted. *Gonzales v. State*, 685 S.W.2d 47, 49 (Tex.Crim.App.1985); *Cook v. State*, 720 S.W.2d 867, 868 (Tex.App.—Beaumont 1986, no pet.). We have examined the record and conclude that the trial court's instruction to disregard the testimony was sufficient in this case to cure the error. Appellant's fourth point of error is overruled.

In the instructions given the jury, the trial court instructed the jury that only if they found the defendant not guilty of possession of marijuana of more than four ounces would they consider whether the defendant was guilty of the lesser included offense of possession of less than four ounces of marijuana. The jury came back with a verdict form convicting the appellant of possession of marijuana of more than

four ounces *and* possession of marijuana of less than four ounces. The appellant requested the trial court to enter judgment finding appellant guilty only of misdemeanor possession of marijuana. The court refused. The trial court also refused to submit appellant's requested jury instruction that "If you disagree as to whether or not a felony or a misdemeanor, possession took place by the defendant, then you are instructed that you have—no duty at all to return any kind of verdict. You only have to deliberate a reasonable length of time, and nothing that's been given—no instructions that's been given you or implied that any individual juror must give up his opinion about misdemeanor possession, in this case." Instead, the trial court submitted a written instruction to the jury that "The Court cannot receive your verdict in its present form. The jury must arrive, if possible, at only one verdict and have the foreman sign only one verdict form." The appellant objected to all of the trial court's actions detailed above.

The trial court not only has the power, but the duty, to reject an informal or insufficient verdict, call the attention of the jury to the informality or insufficiency, and either have the same corrected with their consent, or send them out again to consider their verdict. *Neal v. State*, 689 S.W.2d 420, 428 (Tex.Crim.App.1984); *Eads v. State*, 598 S.W.2d 304, 306 (Tex.Crim.App.1980); TEX.CODE CRIM.PROC.ANN. art. 37.10 (Vernon Supp.1987). It is clear that the original verdict in this case, to say the least, was not in proper form. The jury had originally convicted appellant of *both* felony and misdemeanor possession of marijuana notwithstanding the fact that they could only convict appellant of one or the other of the offenses but not both. We hold that the trial court's decision not to accept the jury's first verdict and to send the jury out again to consider their verdict in the light of the trial court's additional instructions was proper. We do not agree

with appellant's contention that the trial court's action in rejecting the jury's first verdict amounted to an instructed verdict of guilty or constituted a comment on the weight of the evidence. *See Reese*, 725 S.W.2d at 794–95. We also find no merit in appellant's complaint that the trial court erred in refusing to submit his requested additional jury instruction. Appellant's points of error five through seven are overruled.

We turn now to the troublesome aspect of this case. Appellant asserts that his motion for new trial should have been granted because the jury was allowed to separate, on two different occasions, without the consent of the defendant after they had been given the court's charge as to guilt or innocence but before they had returned a verdict.

Article 35.23, V.A.C.C.P., gives the trial court the discretion to permit the jurors to separate in a felony case until the court has given its charge to the jury. After receiving the charge, the jury "shall be kept together" until a verdict is rendered or until the jury is finally discharged. Once the charge is given, the jury is only allowed to separate with permission of the court and with the consent of the parties. *Harris v. State*, 738 S.W.2d 207, 222 (Tex.Crim. App.1986) (on State's motion for rehearing); TEX.CODE CRIM.PROC.ANN. art. 35.23 (Vernon 1966).

The law prohibiting jury separation is one of the most fundamental and ancient in the English speaking world. Since the middle ages the common-law in England was that in all cases, civil as well as criminal, a jury once sworn could not be discharged or permitted to separate before they had agreed on a verdict. This law, as applied, is given an excellent examination in Annot. 34 A.L.R. 1115 (1925) where it is stated:

> "... the jurors were kept together at the bar of the court, and on the submission of the cause, they were placed in charge of a sworn officer, and kept without separation, or communication with other persons, and without food, drink, fire or

light, except by license of the court. They were, in fact, prisoners of the court. Banister, J., in Bishop of N, of Earl of Kent, 14 Hen. VII. (Eng.) chap. 29. The rule as to the confinement of juries after retiring from the bar, as originally maintained and enforced in the English courts, is thus stated in 2 Co. Litt. 227b; 'By the law of England a jury, after their evidence given upon the issue, ought to be kept together in some convenient place, without meat or drink, fire or candle, which some books call an imprisonment, and without speech with any, unless it be the bailiff, and with him only if they be agreed'."

The purpose of this rule was to prevent the contamination of jury verdicts by extraneous and improper influences and to coerce the jury into agreement. Fortunately, the courts soon realized that starving and freezing the jury into rendering a verdict was neither just nor conducive to having the jury render fair and well thought out decisions. Therefore, the rule prohibiting the jury from being fed or housed properly was soon dropped. The rule against jury separation, however, has been steadfastly maintained for the admirable reason of preventing jury tampering. This rule is even more stringently applied after the jury retires to deliberate because it is thought the chance of outside influence are greatest when the evidence is all in and that any extralegal information coming to a juror at that time would have a greater effect on the verdict. The rule, in various forms, has been adopted in every state and in all of the federal circuits. For an excellent and exhaustive discussion of the rule and its application in the various jurisdictions in this country see Annot. 72 A.L.R. 3d 248 (1976), 21 A.L.R.2d 1088 (1952); 79 A.L.R. 821 (1932); 34 A.L.R. 1115 (1925); 4 C. TORCIA, WHARTON'S CRIMINAL PROCEDURE §§ 549–553 (12th ed. 1976).

The law in Texas is clear that if a jury is allowed to separate in violation of article 35.23, the separation is *presumed* harmful to the appellant, and reversal is required unless the state has presented evidence which affirmatively negates the presumption. *Harris v. State*, 738 S.W.2d at 222; *McDonald v. State*, 597 S.W.2d 365, 367 (Tex.Crim.App.1980), cert. denied 449 U.S. 1010, 101 S.Ct. 564, 66 L.Ed.2d 467 (1980); *Skillern v. State*, 559 S.W.2d 828, 830 (Tex.Crim.App.1977).

Here, the State takes the position that, under these facts, no jury separation occurred as contemplated by Article 35.23; therefore, the State was not required to present evidence to prove that a separation was harmless. We disagree.

After the charge was given, the trial judge left the courthouse to have his automobile repaired. The first incident occurred one hour into deliberations and before the judge returned. The bailiff, standing in the open doorway to the jury room, asked the attorneys, "Got a woman juror here that needs to go to the bathroom. Any objections?" The prosecutor said no, he had no objections to that. The bailiff then turned to the defense attorney who also said he had no objections. All of the jurors could hear this conversation. At this point, one juror did leave, going to the public restroom.

We agree with appellant that "consent" pursuant to article 35.23 was not given. To comply with article 35.23 both the trial judge and the appellant (not merely his counsel) must give consent. Therefore, we need not reach appellant's contention that his attorney's consent was given under "duress."[1]

The second incident of separation also occurred before the judge returned to the courthouse. After the first "verdict" was reached and before this first "verdict" was

---

1. We strongly condemn the bailiff's action in this case. The bailiff should not have allowed the jurors to hear his conversation with the attorneys about allowing one juror to separate from the rest of the jurors and use the restroom. No rational defense attorney or district attorney would risk the wrath of the jury at this stage of

the proceedings by refusing such a request when they are within earshot. *See People v. Werwee* 112 Cal.App.2d 494, 499–502, 246 P.2d 704, 708–09 (Cal.Ct.App.1952). We note that article 35.23 states that any person who makes known to the jury which party did not consent

given to the judge, the bailiff opened an adjoining door from the jury room into the Child Support Office of the State Attorney General. This office contained a telephone, file cabinets and other office equipment. The jurors were admitted into this room so they could use the telephone.

At the hearing on the motion for new trial, the state failed to call as a witness the juror who went unescorted to the restroom and ask her whether anyone conversed with her about this case while she was separated from the other jurors. The state failed to call any of the remaining jurors as witnesses to determine their conduct during this time. There was no witness called to reflect how many jurors used the telephone or whether any juror left this adjoining room to go elsewhere before the judge returned and sent the jury back for further deliberations. Indeed, the state failed to call any witnesses to help shed light on what actually transpired. In summation, the state presented *no evidence whatsoever* to rebut the presumption of harm, but rather relied solely on their assertion that no separation occurred or that the appellant had consented to the separation. We conclude that separation did occur and no consent was given, or could be given, under these facts as a matter of law.

As we noted, the evidence of appellant's guilt is overwhelming. Were we not constrained by the presumption of harm we could easily find harmless error from this record. See TEX.R.APP.P. 81(b)(2). However, the presumption of harm when there is a separation of the jury in violation of an applicable statute is by no means unique to Texas jurisprudence. *See e.g. Reeves v. State,* 432 So.2d 543 (Ala.Cr.App.1983); *Kimoktoak v. State,* 578 P.2d 594 (Alaska 1978) (separation in violation of statute *per se* reversible error); *People v. Werwee,* 112 Cal.App.2d 494, 246 P.2d 704 (1952); *Taylor v. State,* 498 So.2d 943 (Fla.1986); *Legare v. State,* 243 Ga. 744, 257 S.E.2d 247 (Ga.1979) cert. denied 444 U.S. 984, 100 S.Ct. 491, 62 L.Ed.2d 413 (1980); *State v. Sly,* 11 Idaho 110, 80 P. 1125 (1905); *People v. Ritzert,* 17 Ill.App.3d 791, 308 N.E.2d

636 (1974); *Adams v. Commonwealth,* 310 Ky. 506, 221 S.W.2d 81 (1949); *State v. Willis,* 371 So.2d 1327 (La.1979); *People v. McDonald,* 38 Mich.App. 639, 196 N.W.2d 834 (1972); *State v. Holly,* 350 N.W.2d 387 (Minn.App.1984); *State v. Bautista,* 193 Neb. 476, 227 N.W.2d 835 (1975); *People v. Clayborn,* 50 A.D.2d 952, 376 N.Y.S.2d 208 (1975); *State v. Lamoreaux,* 62 N.D. 55, 241 N.W. 595 (1932); *Gibson v. State,* 512 P.2d 1399 (Okl.Cr.App.1973); *State v. McClain,* 667 S.W.2d 64 (Tenn.1984). Appellant's eighth point of error is sustained.

In appellant's ninth, and final, point of error he alleges that the trial court erred in refusing to allow him to introduce evidence that confinement in the Texas Department of Corrections constitutes cruel and unusual punishment. Appellant preserved nothing for review by failing to show by bill of exception what the excluded testimony and evidence would have been. *Stewart v. State,* 686 S.W.2d 118, 122 (Tex.Crim. App.1984); *Drake v. State,* 432 S.W.2d 906, 908–09 (Tex.Crim.App.1968). Appellant's ninth point of error is overruled.

For the reasons stated, we reverse the judgment of the trial court and remand this cause for new trial.

to separation shall be punished for contempt of court. The bailiff's misconduct was further aggravated by his failure to escort the juror to and from the restroom so as to ensure that she spoke to no one and no one spoke to her.