THIRD DIVISION

June 10, 1998 

No. 1--97--0470

VITA CHARLESTON, ) Appeal from the

)   Circuit Court of 

Plaintiff-Appellant, )   Cook County.

)

v. ) 

) 

JOHN K. LARSON, M.D., )   

)

Defendant-Appellee, )  

) 

and ) 

)

ANDREW THAIN, ) Honorable

) Kathy M. Flanagan,

Defendant. ) Judge Presiding.

JUSTICE BURKE delivered the opinion of the court: 

Plaintiff Vita Charleston appeals from an order of the circuit court granting defendant Dr. John Larson's section 2--615 motion to dismiss plaintiff's complaint (735 ILCS 5/2--615 (West 1994)), which alleged that she suffered injuries as a result of the negligence of defendant and Andrew Thain.
(footnote: 1)  Plaintiff also appeals the court's denial of her motion to amend her complaint.  On appeal, plaintiff contends that: (1) the trial court improperly dismissed plaintiff's action because defendant owed plaintiff a duty of care based on the theories of a special relationship between plaintiff and defendant or negligent undertaking to perform services to protect plaintiff or medical/psychological malpractice; and (2) the trial court improperly denied plaintiff's request for leave to file a second amended complaint.  For the reasons set forth below, we affirm.

On April 2, 1992, defendant Andrew Thain (Thain) voluntarily admitted himself on an emergency basis to CPC Streamwood Hospital (CPC), a facility providing general duty nursing care in Streamwood, Illinois.  Defendant was a duly licensed physician who practiced psychiatry at CPC.  Plaintiff was a nurse at CPC.  According to plaintiff, on May 3, 1992, Thain attacked and beat her without provocation, after threatening her on the same day that he "would break her neck."

Plaintiff filed a complaint against defendant and Thain on May 2, 1994, alleging claims based on negligence and intentional tort.  On November 7, 1994, defendant filed a motion to dismiss plaintiff's complaint pursuant to section 2--622(g) of the Code of Civil Procedure (Code) (735 ILCS 5/2--622(g) (West 1994)), arguing that plaintiff's complaint did not contain a medical provider's affidavit.  On September 19, 1995, the trial court denied defendant's motion and granted plaintiff leave to file an affidavit.  Plaintiff filed the affidavit of physician/psychiatrist, Dr. Nelson Borelli, which stated that at the time of Thain's admission to CPC, he was a high risk patient who had a history of alcohol, drug and sexual abuse, and engaged in self-mutilation.  Dr. Borelli stated that the CPC records did not indicate that an initial complete work up was performed by defendant.  Additionally, there was no indication that the staff at CPC was informed of Thain's "dangerous condition."  Dr. Borelli claimed that defendant should have prescribed anti-psychotic medication for Thain, and that during Thain's stay at CPC he "was showing increased agitation."  In his professional opinion, Dr. Borelli claimed that defendant deviated from the applicable standard of care.

On August 19, 1996, the trial court granted plaintiff's request to file an amended complaint.  On September 10, plaintiff filed a four-count amended complaint, alleging claims based on common law negligence (count I) and "medical/psychological negligence" (count II) against defendant.
(footnote: 2)  More specifically, plaintiff alleged that defendant, as the medical director at CPC, "voluntarily undertook" to render services to Thain, and that Thain was under the care, supervision and control of defendant regarding access to staff, diet, and treatment; Thain informed CPC staff during his admission that "the last time someone messed with him, it took six people to hold [him] down"; defendant ordered plaintiff to observe Thain every 15 minutes, 24 hours a day; and defendant allegedly knew or should have known that Thain's condition deteriorated and that he posed a serious risk of danger to those in close proximity to him.  Plaintiff further alleged that defendant failed to follow CPC policy by not ordering a "complete initial work up" of Thain, not following procedures regarding treatment of dangerous persons, and not performing a 30-day assessment of Thain; defendant failed to properly treat Thain, specifically by failing to prescribe anti-psychotic medications and failing to provide restrictions and restraints; and defendant did not warn plaintiff or other CPC employees of Thain's dangerous propensities, nor did he instruct them regarding the proper and safe ways to approach Thain or to protect themselves from Thain.    

On October 11, 1996, defendant filed a motion to dismiss counts I and II of plaintiff's amended complaint pursuant to section 2--615 of the Code.  (735 ILCS 5/2--615 (West 1994)).  On December 27, the trial court issued a memorandum opinion granting defendant’s motion to dismiss and denying plaintiff leave to amend.  On January 2, 1997, the trial court issued an amended memorandum of opinion.  In its amended memorandum opinion, the court stated that plaintiff’s amended complaint did not allege facts giving rise to a special relationship between plaintiff and defendant or showing that Thain’s attack was reasonably foreseeable in order to impose liability on defendant.  The court further stated that there were "absolutely no facts" to support plaintiff's "conclusory" allegation that defendant knew or should have known that his services to Thain were necessary for the protection of persons in close proximity to Thain.  The court also found that plaintiff’s amended complaint lacked allegations that defendant voluntarily undertook to perform services for plaintiff sufficient to create a legal duty owed by defendant to plaintiff.  The court specifically stated that it was “unwilling to accept outside authority [relied on by plaintiff] on an issue which has been clearly defined by Illinois law.”  With regard to plaintiff's argument of "medical/psychological negligence," in support of which plaintiff cited to 
Eckhardt v. Kirtz
, 179 Ill. App. 863, 534 N.E.2d 1339 (1989), the trial court stated that defendant was liable under the standards set forth in 
Eckhardt
.  This appeal followed.
(footnote: 3)   

Plaintiff contends that defendant's "unique position” as a physician and medical director, "combined with his knowledge, the foreseeability of injury, and the minimal burden of guarding against certain injury to the plaintiff, warrant the application of a duty by [defendant] to act reasonably to the plaintiff related to [defendant]'s involvement with Mr. Thain” under recognized Illinois law.  Plaintiff argues that, as a psychiatrist, defendant had specific knowledge in recognizing, treating and managing Thain’s dangerous condition, and that he alone possessed the means to control and restrict Thain’s activities, and warn or “simply inform” plaintiff of the danger posed by Thain.  Plaintiff further argues that defendant knew Thain was a “ticking bomb” and it was “more than” reasonably foreseeable that he would explode, and “virtually certain” that he would attack a staff nurse such as plaintiff.  Plaintiff also asserts that she was professionally and ethically obligated to follow defendant’s instructions, and that she relied on his instructions in interacting with dangerous persons such as Thain.  

Defendant contends that he owed no duty to protect plaintiff against criminal attacks by a third person under any theory recognized by Illinois law.  Specifically, defendant argues that under common law negligence defendant owed plaintiff no duty to act with reasonable care to protect plaintiff from Thain, and plaintiff failed to allege facts establishing that Thain's attack upon plaintiff was reasonably foreseeable--a prerequisite to the application of any of the exceptions to the general rule of duty.  Defendant therefore maintains that, in the absence of a duty, the trial court properly dismissed plaintiff’s amended complaint.

When reviewing the dismissal of a complaint pursuant to section 2--615, this court must determine whether the complaint, when considered in a light most favorable to the plaintiff, alleged facts sufficient to state a cause of action.  
Ziemba v. Mierzwa
, 142 Ill. 2d 42, 46, 566 N.E.2d 1365 (1991).  In assessing the sufficiency of a complaint, we must take as true all well-pleaded facts and reasonable inferences drawn from those facts.  Our review is 
de
 
novo
.  
Doe v. McKay
, 286 Ill. App. 3d 1020, 1023, 678 N.E.2d 50 (1997).

In order to prevail in a negligence action, a plaintiff’s complaint must set forth facts establishing the existence of a duty owed by defendant to plaintiff, a breach of that duty and an injury proximately caused by the breach.  The determination of duty, or whether the defendant and the plaintiff stood in such a relationship to one another that the law imposes an obligation of reasonable conduct upon the defendant for the benefit of the plaintiff, is a question of law.  
Estate of Johnson v. Condell Memorial Hospital
, 119 Ill. 2d 496, 503, 520 N.E.2d 37 (1988).  However, the legal determination of whether a duty exists is dependent upon the factual circumstances giving rise to the litigation.  
Hernandez v. Rapid Bus Co.
, 267 Ill. App. 3d 519, 522, 641 N.E.2d 886 (1994).  In determining whether a legal duty exists, Illinois courts consider whether the harm was reasonably foreseeable, the likelihood of injury, the magnitude of the burden of guarding against harm and the consequences of placing that burden on the defendant.  
Ziemba
, 142 Ill. 2d at 47.

Generally, Illinois law does not impose a duty to protect another from a criminal attack by a third person unless the attack was reasonably foreseeable and the parties stand in one of the following “special relationships”: (1) common carrier and passenger; (2) innkeeper and guest; (3) business invitor and invitee; and (4) voluntary custodian and protectee.  
Hernandez
, 267 Ill. App. 3d at 524.  A second exception exists where there is negligence in the performance of a voluntary undertaking.  Restatement (Second) of Torts §324A (1965).  Section 324A of the Restatement (Second) of Torts (Restatement), states:

“One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if

(a) his failure to exercise reasonable care increases the risk of such harm, or 

(b) he has undertaken to perform a duty owed by the other to the third person, or 

(c) the harm is suffered because of reliance of the other or the third person upon the undertaking.” 
Rowe v. State Bank of Lombard
, 125 Ill. 2d 203, 217-18, 531 N.E.2d 1358 (1988); 
Hernandez
, 267 Ill. App. 3d at 524.
(footnote: 4)        

Plaintiff asserts that because "the relationship of a psychiatrist and patient is a unique one which creates duties toward third persons” and "[t]he relationship of a psychiatrist to his nurse relating to known dangerous persons is a unique one which creates duties to the nurse," our courts should therefore "recognize these special relationships and permit the plaintiff to maintain her cause of action against [defendant]."  

Defendant contends that Illinois courts have consistently refused to extend the "special relationship" exceptions beyond the four limited relationships recognized in 
Hernandez
 and 
Rowe
.  For example, in 
Sicklas v. Ecker Center for Mental Health, Inc.
, 248 Ill. App. 3d 124, 617 N.E.2d 507 (1993), the court rejected the plaintiff’s argument that a special relationship existed between the plaintiff psychiatric patient and the defendant mental health facility which offered housing services for the mentally ill.  In 
Sicklas
, the plaintiff was placed by the defendant to live in an apartment with another of the defendant’s clients.  When the plaintiff was attacked by the defendant’s other client, he sued the defendant for breach of a legal duty.  The court held that the plaintiff did not “offer any cogent reasons *** for expanding the scope of the narrow [special relationship] exceptions.”  
Sicklas
, 248 Ill. App. 3d at 130.  

Plaintiff concedes that no Illinois court has addressed the extension of the four special relationships to include the relationship between a psychiatrist-medical director and his nurse, but argues that the authority of other jurisdictions, extending the special relationship concept in this area, “provide[s] cogent legal analyses for the extension of a special relationship in this area.”  Specifically, plaintiff cites to 
Turner v. Jordan
, 1995 Tenn. App. Lexis 576, (Tenn. Ct. App. Aug. 30, 1995), 
reh'g denied
, 1996 Tenn. App. Lexis 216 (Tenn. Ct. App. Apr. 10, 1996), where the court held that in today’s environment, the defendant psychiatrist and nurse had the type of special relationship that can lead to the imposition of a duty when the nurse was attacked by the psychiatrist’s patient and filed an action against the psychiatrist; and 
Evans v. Morehead Clinic
, 749 S.W.2d 908 (Ky. Ct. App. 1988), where the court held that the relationship of a psychiatrist and a patient is a special relationship creating a duty and permitting a cause of action against the patient’s psychiatrist for the victim who was shot by the patient.  Plaintiff further relies on 
Tarasoff v. Regents of the University of California
, 17 Cal. 3d 425, 551 P. 2d 334 (1976), a leading case encompassing the issue of special relationships, where the court imposed a duty on a psychiatrist to warn a third party concerning a dangerous patient, and which was relied upon by the 
Turner
 and 
Evans
 courts. 

Plaintiff also cites to 
Doe
 and 
Renslow v. Mennonite Hospital
, 67 Ill. 2d 348, 367 N.E.2d 1250 (1977), in support of her assertion that Illinois law has also examined and expanded the concept of duty in the area of psychiatric treatment since 
Sicklas
.  In 
Doe
, during a child’s psychiatric treatment by the defendant psychiatrists, the child allegedly discovered repressed memories of alleged sexual abuse by her father.  When confronted with this information, the plaintiff father also entered into a treatment program with the defendants.  When the plaintiff sued the defendants for the loss of his child’s society and companionship  based on the alleged negligent treatment of his child (who was not a party to the suit), the court held that the defendants owed a duty to the plaintiff regarding their treatment of the child under the doctrine of “transferred negligence.”  The court held that 

“in a case such as this involving repressed memories of sexual abuse, where the parent is brought into the treatment process by the therapist, a therapist’s duty to the patient to use reasonable care in the treatment process is extended to the parent.”  
Doe
, 286 Ill. App. 3d at 1025.

Plaintiff claims that the 
Doe
 holding "evidences a willingness by the court to expand the definition of 'special relationship' " to apparently include the relationship between a psychiatrist and his nurse, as in the present case, based on the 
Doe
 court's comments that "duty" is not a sacrosanct concept, but "only an expression of the sum total of those considerations of policy which lead the law to say that the plaintiff is entitled to protection."  
Doe
, 286 Ill. App. 3d at 1025.

In 
Renslow
, the defendant physician negligently transfused the plaintiff's mother with incompatible blood prior to the plaintiff's birth.  The plaintiff's mother first learned that her blood had been sensitized years later when she was pregnant with the plaintiff.  The plaintiff suffered permanent physical damage due to the conduct of the defendants.  The 
Renslow
 court held that the non-patient plaintiff could nonetheless maintain a cause of action against the physician and the hospital under the "limited area of transferred negligence" because of the intimate nature of the relationship between the parties harmed.  
Renslow
, 67 Ill. 2d at 357-59.

Neither 
Doe
 nor 
Renslow
 supports plaintiff's assertion that this court should expand the special relationship exception and find that defendant owed plaintiff a duty.  Both cases turned on the doctrine of transferred negligence.  In the present case, we find plaintiff's contention, that the "unique" nature of the psychiatrist-nurse relationship warrants application of the special rela
tionships doctrine, is contrary to well settled law which has narrowly interpreted the doctrine where the plaintiff did not have a direct physician-patient relationship with the physician whom he sued, to include only relationships of such an intimate nature (
i
.
e
., between parent and child) that can give rise to a theory of transferred negligence of the physician's services.  While it cannot be denied that a psychiatrist and his nurse have a relationship in their mutual interests in their patients and the institution where they are employed, that relationship does not rise to the level of the intimacy required by our courts to warrant the application of transferred negligence.  We therefore decline to follow 
Turner
 and 
Evans
 in light of our own law establishing that special relationships should be narrowly interpreted in medical malpractice actions where a direct physician-patient relationship between the doctor and the patient is absent.  Accordingly, we hold that a special relationship did not exist between plaintiff and defendant sufficient to create a duty on the part of defendant to protect plaintiff from a third-party criminal attack pursuant to 
Rowe
 and 
Hernandez
.   

Plaintiff further contends that 
Hernandez
, 
Sicklas
 and 
Johnson
, along with sections 314, 315, 319, 323 and 324A of the Restatement, stand for the proposition that a voluntary negligent undertaking, including that related to a known dangerous person, creates a duty owed by a defendant in favor of third parties in the context of third-party criminal liability.  Plaintiff argues that she has pleaded facts sufficient to create a duty owed by defendant to plaintiff, 
i
.
e
., that defendant voluntarily undertook to treat Thain after his admission into CPC, coupled with defendant's positions as physician and medical director, his knowledge of Thain's dangerous propensities and deteriorating condition, his control of Thain and his opportunity to avoid injury.

In 
Hernandez
, the court held that the plaintiff pleaded a genuine issue of fact as to whether the defendant school bus company had a duty to foresee possible harm to the plaintiff's daughter, a special education student who was raped while she walked unescorted from the school bus into the school.  The incident occurred after the defendant's employee had allegedly agreed to assume the responsibility of escorting the students, which service was originally provided by employees of the Chicago Board of Education.  In considering section 324A of the Restatement, the 
Hernandez
 court held that the defendant was liable for the criminal acts of a third party because the defendant voluntarily undertook to provide escort services, and then negligently performed them.  The court stated that "even under circumstances that might arguably give rise to the application of section 324A, the occurrence for which tort recovery is sought must be reasonably foreseeable."  The court further stated that it is not necessary that the defendant foresee the precise harm that in fact occurred, as long as a reasonably prudent person would have foreseen, at the time of the defendant's action or inaction, that some harm to another was likely to occur.  
Hernandez
, 267 Ill. App. 3d at 524-26.

In 
Sicklas
, while the court held that the plaintiff patient could not recover against the defendant institution on his theory that a special relationship existed between the plaintiff and the defendant, it did find that the defendant voluntarily undertook to perform services for the plaintiff, thereby giving rise to a duty by the defendant to exercise reasonable care in providing such services.  In reaching its decision, the 
Sicklas
 court relied on section 323 of the Restatement, which provides:

"One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if

(a) his failure to exercise such care increases the risk of such harm, or

(b) the harm is suffered because of the other's reliance upon the undertaking."  Restatement (Second) of Torts §323 (1965); 
Sicklas
, 248 Ill. App. 3d at 131.

The 
Sicklas
 court also held that "the scope of an assumed duty is limited by the extent of the undertaking."  
Sicklas
, 248 Ill. App. 3d at 131.

 In 
Johnson
, a patient of the defendant mental institution obtained a knife and escaped from the facility.  After the victim was killed during a police chase of the patient, her estate sued the defendant, arguing that section 319 of the Restatement gave rise to a duty owed her by the defendant institution.  Pursuant to section 319,

"[o]ne who takes charge of a third person whom he knows or should know to be likely to cause bodily harm to others if not controlled is under a duty to exercise reasonable care to control the third person to prevent him from doing such harm."  Restatement (Second) of Torts §319 (1965).

The 
Johnson
 court held that a mental hospital has a duty to control dangerous persons 
committed to its custody
, and that in cases where it was held there was a duty imposed on medical institutions to protect third parties from harm, the institutions had custody of the dangerous persons through a court order or adjudication that gave them actual control over the individuals.  
Johnson
, 119 Ill. 2d at 507-08.  Because the 
Johnson
 plaintiff's complaint did not allege that the patient was either involuntarily committed to the institution, or that she was voluntarily admitted but had subsequently lost her right to request discharge because the institution had filed a petition to detain her, the 
court held that the defendant did not have a duty to control the patient that would extend to include a duty to the decedent.  
Johnson
, 119 Ill. 2d 496 507-09.  

In the instant case, defendant argues that neither sections 323 nor 324A is applicable because both of those sections require that the defendant render services to the plaintiff directly, and that the defendant who undertakes to render services to the other person "recognizes the services as necessary for the protection of" that other person.  Defendant further argues that plaintiff does not allege specific facts which demonstrate why defendant should have recognized that his treatment of Thain was necessary for the protection of plaintiff.  Defendant asserts that "certainly" a doctor does not treat patients with the understanding or purpose of protecting the medical staff working with the doctor.  More specifically, defendant argues that section 324A, subsection (a), does not apply because nothing that defendant did or omitted to do 
increased
 the risk of harm to plaintiff since the attack was a violent outburst which was unexpected and unpredictable; subsection (b) does not apply because defendant never undertook to perform the duty of care that Thain owed to plaintiff to exercise reasonable care and not to injure plaintiff; and subsection (c) does not apply because it requires that the harm is suffered because of the reliance on the undertaking by the other person (Thain) or the third party (plaintiff), and plaintiff cannot allege in good faith that either Thain's conduct resulted from Thain's reliance on defendant, or that Thain's conduct resulted from plaintiff's reliance on defendant.

We find that plaintiff's voluntary undertaking theory of defendant's liability in this case fails at the outset because plaintiff never alleged that defendant undertook services for 
plaintiff
, but rather, that defendant undertook to protect 
Thain
.  Therefore, the facts of this case are distinguishable from those of both 
Hernandez
 and 
Sicklas
 based on the nature of plaintiff's and defendant's relationship.
  The rationale of 
Hernandez
 is premised upon a third party's duty to protect a plaintiff which duty defendant then voluntarily assumes.  In this case, because no one assumed a duty to protect plaintiff, defendant could not have voluntarily assumed the duty to perform the duties of another for the protection of plaintiff.  
Sicklas
 is also distinguishable because, unlike the plaintiff in that case, plaintiff here was not defendant's patient, but rather, an employee of the institution where the patient was hospitalized.  Additionally, unlike the 
Sicklas
 defendant, defendant in this case did not care for, treat or provide services for plaintiff.  
Johnson
 is also distinguishable from the case at bar because plaintiff has not alleged facts sufficient to establish that Thain was a patient committed to the custody and control of defendant by either court ordered involuntary admission or a petition filed by CPC restricting the voluntary status of Thain's admission.  

With the exception of 
Hernandez
, 
Sicklas
 and 
Johnson
, which are distinguishable from the present case, plaintiff fails to cite to authority in support of her argument that sections 323 and 324A are applicable to the facts she alleges in this action.  Furthermore, because plaintiff fails to cite to authority or make specific argument in support of her assertion that sections 314 and 315 apply, she has therefore waived those arguments.  When an appellant seeks reversal, "theories not pursued nor advanced with citation of authorities are deemed waived."  
Saldana v. Wirtz Cartage Co.
, 74 Ill. 2d 379, 385 N.E.2d 664 (1978).    

We briefly observe that even if we were to find that defendant owed plaintiff a duty in this case under either the special relationship or voluntary undertaking theory, plaintiff's amended complaint simply does not allege facts establishing that Thain's attack on plaintiff was reasonably foreseeable, as required to prevail on her claim that defendant owed her a duty.  Plaintiff's allegations regarding defendant's knowledge of Thain's violent propensities, as correctly determined by the trial court, were nothing more than improper conclusions.  The only specific threats that were alleged to have been made to plaintiff by Thain occurred on the same day of the attack, and plaintiff never alleged that defendant had knowledge of these threats directed to plaintiff.  The only other fact plaintiff pleads regarding foreseeability of injury is Thain's comment that "the last time someone messed with him, it took six people to hold [him] down."  The trial court did not find these facts sufficient to show foreseeability, and neither does this court.  In the absence of factual allegations establishing reasonable foreseeability of Thain's attack on plaintiff, her negligence action against defendant fails.  Because we affirm the trial court's order granting defendant's motion to dismiss based on the issue of duty that was fully briefed in the trial court, we need not address the issue, raised by defendant on appeal but not in the trial court, of whether the trial court's order can be affirmed on the ground that plaintiff's complaint did not contain allegations sufficient to show proximate causation. 

 Plaintiff's next argument is based on her prior argument that "an entire body of law," both in Illinois and other jurisdictions, has emerged regarding a failure to warn and a failure to control dangerous patients.  She contends that "this evolution of the law suggests that under the facts of this matter, Illinois courts will recognize a duty [owed] by a psychiatric physician to his nurse within the context of professional medical negligence."  Plaintiff relies on 
Eckhardt
 in support of her contention that Illinois law recognizes a cause of action against a psychiatrist for the psychiatrist's failure to warn a plaintiff of the patient's threats against the plaintiff.

 In 
Eckhardt
, after the decedent's husband, a patient of the defendant, shot her in her sleep, the decedent's administrator filed a malpractice action against the defendant psychiatrist, alleging that the defendant failed to warn the decedent of her husband's violent propensities.  The 
Eckhardt
 court stated that a non-patient plaintiff, who alleges that a psychiatrist owed the plaintiff a duty to warn, must establish three elements in order to sustain her cause of action.  "First, the patient must make specific threat(s) of violence; second, the threat(s) must be directed at a specific and identified victim; and, third, a direct physician-patient relationship between the doctor and the plaintiff or a special relationship between the patient and the plaintiff."    
Eckhardt
, 179 Ill. App. 3d at 872-73.  

In the present case, plaintiff asserts that she has "complied with the requirements of 
Eckhardt
."  Defendant contends that because no physician-patient relationship existed between plaintiff and defendant, defendant owed no duty to plaintiff under a medical negligence theory.  Defendant further maintains that 
Eckhardt
 does not support plaintiff's argument because, consistent with Illinois precedent, the 
Eckhardt
 case presupposes a physician-patient relationship or a special relationship between the patient and the plaintiff in order to impose a duty to warn upon the 
psychiatrist
.  Defendant also argues that even if plaintiff were able to allege facts supporting the first two elements in 
Eckhardt
, she has not and cannot show the existence of either the patient-physician relationship or a special relationship.  

Illinois law is well settled that a plaintiff cannot maintain a medical malpractice cause of action absent a direct physician-patient relationship with the defendant unless a special relationship exists between a patient and the plaintiff.  
Kirk v. Michael Reese Hospital & Medical Center
, 117 Ill. 2d 507, 531, 513 N.E.2d 387 (1987).  In 
Kirk
, the court noted that several jurisdictions have held that a physician's relationship with a patient was sufficient to impose a duty to protect unidentifiable third parties endangered by the patient.  The court specifically stated, however, that such a position is inconsistent with Illinois precedent and public policy.  In refusing to extend the physician's duty of care to an indeterminate class of potential plaintiffs, the 
Kirk
 court also acknowledged that in 1986 the legislature enacted medical malpractice legislation intended to reduce the burden of litigation against health care professionals.  
Kirk
, 117 Ill. 2d 507 at 531-32. 

 In the present case, we find no merit in plaintiff’s assertion that she has “complied with the requirements of  
Eckhardt
.”  Plaintiff has not alleged that Thain ever threatened to harm her or any other nurse in defendant’s presence or during the course of Thain’s treatment.  Even if plaintiff were to satisfy the first two elements of 
Eckhardt
, 
i
.
e
., that Thain made specific threat(s) of violence and the threat(s) were specifically directed at her, her argument is nonetheless without merit because plaintiff cannot establish the existence of a special relationship between herself and Thain, as discussed above.

 Lastly, plaintiff contends that the trial court should have allowed her an opportunity to replead after it granted defendant’s motion to dismiss.  Plaintiff argues that, contrary to the trial court’s finding in its amended memorandum of opinion that her amended complaint lacked allegations that defendant undertook to perform services for plaintiff, plaintiff did allege in her amended complaint that defendant, in his capacity as medical director at CPC, ordered her to observe Thain every 15 minutes and, in such capacity, defendant “agreed to perform a myriad of duties for the staff, including plaintiff.”  Plaintiff argues that her amended complaint fairly inferred that she was obligated to comply with defendant’s instructions, guidelines and policies to her detriment, and to the extent that the court required specific pleadings regarding defendant’s relationship with plaintiff, plaintiff should have been granted leave to file a second amended complaint.  Plaintiff also disagrees with the trial court’s finding that her amended complaint lacked allegations giving rise to a special relationship or to any reasonable foreseeability of Thain’s attack, and argues that to the extent that the allegations were necessary, she should have been afforded an opportunity to replead.

 Defendant contends that the trial court properly denied plaintiff’s leave to file a second amended complaint because well settled precedent in Illinois precludes a plaintiff from bringing a medical negligence action against a defendant where no physician-patient relationship or special relationship exists.  Defendant argues that because “no amendment would have cured the absence of a duty owed by [defendant] to plaintiff, the [trial court] properly denied [plaintiff's motion for] leave to amend.”

 A cause of action should not be dismissed on the pleadings unless it clearly appears that no set of facts can be proven entitling the plaintiff to recover.  
People ex rel Daley v. Datacom Systems Corp.
, 146 Ill. 2d 1, 11, 585 N.E.2d 551 (1991).  A trial court has broad discretion in determining whether to allow an amendment to a complaint, and its ruling on the matter will not be disturbed on review absent an abuse of that discretion.  
Braun-Skiba, Ltd.
, 279 Ill. App. 3d 912, 921-22, 665 N.E.2d 485 (1996).  On review by this court, “all facts properly pleaded in the complaint must be taken as true.”  
Daley
, 146 Ill. 2d at 11.  The following factors are relevant in assessing the propriety of a trial court’s ruling on a motion to amend a pleading: (1) whether the proposed amendment would cure the defective pleading; (2) whether other parties would be prejudiced or surprised by the proposed amendment; (3) whether the proposed amendment is timely; and (4) whether the party seeking amendment had other opportunities to do so.  
Winfrey v. Chicago Park District
, 274 Ill. App. 3d 939, 947-49, 654 N.E.2d 508 (1995) (the court held that the plaintiff’s third amended complaint suffered from the same deficiencies as his second amended complaint, and contained bare allegations and conclusions supported by no facts).

 In the present case, plaintiff has not demonstrated that the trial court abused its broad discretion in denying her request to file a second amended complaint.  The trial court specifically addressed plaintiff’s argument that defendant owed plaintiff a duty under theories of special relationship, negligent undertaking and medical malpractice, and held that the proposed amendment would not cure the defective pleading under principles of well settled Illinois law which the trial court was unwilling to expand based on foreign authority.  Plaintiff's "foreseeability argument" also fails for the reasons discussed above.  Additionally, even taking plaintiff’s allegations as true, that she was obligated to comply with defendant’s instructions to her detriment, plaintiff has not pleaded sufficient facts to infer that she and defendant stood in a special relationship or that defendant voluntarily undertook to perform services on 
plaintiff's behalf that would be sufficient under 
Illinois
 law to impose a duty on defendant.  Moreover, the trial court had afforded plaintiff one opportunity to cure her initially defective complaint, prior to her second motion to amend.  Because two of the four 
Winfrey
 factors are present in this case, 
i
.
e
., the proposed amendment would not cure the defective pleading and plaintiff had an opportunity to do so, we hold that the trial court did not abuse its discretion in denying plaintiff's motion to amend her complaint a second time.

 Plaintiff also argues that 
Braun-Skiba
, defendant's "leading case" on the amendment issue, does not specifically address a motion to amend a complaint and the applicability of a section 2--615 motion to dismiss.  According to plaintiff, the 
Braun-Skiba
 court considered whether the plaintiff could file a third amended complaint in a mechanics lien dispute after the trial had been completed.  Plaintiff asserts that the trial court in this case never addressed any of the 
"
Braun-Skiba
 factors" that a court should consider in determining whether to allow a plaintiff to file an amended complaint, but if it had, “plaintiff should have been allowed to replead her complaint.”    

We find no merit in plaintiff’s argument that 
Braun-Skiba
 is inapplicable to the case at bar.  While the facts of that case are distinguishable, it nonetheless addressed 
the issue of whether the trial court abused its discretion in denying a motion to amend a pleading, which is the same issue presented here.  As discussed above, we have determined that the trial court did not abuse its discretion in denying plaintiff's motion to amend her complaint.   Moreover, the 
Winfrey
 case, and not the 
Braun-Skiba
 case, was cited by defendant for a discussion of the relevant factors that a court should consider in allowing an amendment to pleadings.  
In 
Winfrey
, the court upheld the trial court's dismissal of the plaintiff's complaint pursuant to a section 2--615 motion based on its determination that the amended complaint failed to cure the deficiencies in the original complaint.  
See 
also, 
People ex rel. Fahner v. Carriage Way West, Inc.
, 88 Ill. 2d 300, 308, 430 N.E.2d 1005 (1982) (the court held that, although a court must liberally construe pleadings, it cannot deny a motion to dismiss when only conclusions are alleged by the claimant).  Additionally, we note that although the trial court did not specifically identify and outline the 
Winfr
ey
 factors in its memorandum opinion, plaintiff’s assertion that it did not address them at all lacks merit because the trial court specifically held that it was clear that plaintiff was incapable of alleging facts sufficient to state a cause of action, or, as we interpret the trial court's conclusion, the defects in plaintiff's amended complaint could not be cured by further amendment. 

For the reasons stated, we affirm the circuit court's dismissal of plaintiff's complaint.

Affirmed.

LEAVITT, P.J., and CAHILL, J., concur. 

FOOTNOTES
1:
Thain is not a party to this appeal.

2:
Counts III and IV of plaintiff's amended complaint were against Thain.

3:
On April 30, 1997, plaintiff filed a motion with this court to supplement the record, which we denied on May 12.  Defendant simultaneously filed his brief with this court and a motion to strike matters "beyond" the record, claiming that plaintiff's statement of facts in her brief improperly incorporated references to defendant's duties as medical director of CPC, contrary to this court's denial of plaintiff's motion to supplement the record to include a document entitled "Director Agreement," which defendant maintained was not before the trial court.  Defendant, however, did not specify which facts plaintiff has allegedly "improperly incorporated."  Accordingly, defendant's motion to strike is therefore denied.  This court will, however, disregard any inappropriate or unsupported statements upon review of this matter. 
Fallk v. Martell
, 210 Ill. App. 3d 557, 559, 569 N.E.2d 248 (1991).

4:
Plaintiff asserts that a third exception exists when an employee is in imminent danger and this is known by the employer, and a fourth exception exists when a principal fails to warn an agent of an unreasonable risk of harm involved in the agency.  
Peterson v. U.S. Reduction Co.
, 267 Ill. App. 3d 775, 779, 641 N.E.2d 845 (1994).  Because the record shows and plaintiff concedes that "only the special relationship and negligent undertaking [exceptions] were discussed in the trial court," plaintiff is therefore limited to arguing the first two exceptions on appeal.